# IDA V. BROWN v. GUNDER B. GUNDERSON.[1]

November 7, 1913.

Nos. 18,200—(51).

**Breach of promise — evidence.**
> Evidence considered, and *held* to conclusively show that an engagement of marriage between the parties was by mutual agreement released.

Action in the district court for Hennepin county to recover $26,300 for breach of promise. The answer alleged that at the suggestion of plaintiff the engagement to marry was canceled and defendant was released from his promise. The case was tried before Dickinson, J., who denied defendant's motion for a directed verdict, and a jury which returned a verdict for $4,500 in favor of plaintiff. From an order granting defendant's motion for judgment in his favor notwithstanding the verdict, plaintiff appealed. Affirmed.

*Larrabee & Davies,* for appellant.

*Alvord C. Egelston* and *Adolph E. L. Johnson,* for respondent.

BUNN, J.

This is an action to recover damages for breach of promise. Plaintiff recovered a verdict. Defendant moved in the alternative for judgment non obstante or for a new trial. The court ordered judgment to be entered for defendant notwithstanding the verdict, and plaintiff appealed.

Plaintiff, a widow of 47 with six children, and defendant, a widower of 50 with four children, on October 7, 1910, engaged to marry each other. Defendant desired the engagement kept secret, but it became known to one of his daughters, a young lady, who wrote a letter to plaintiff which the latter regarded as insulting. Plaintiff, on December 19, wrote to defendant in regard to this letter from his daughter, and, among other things, said:

"I want you to forget me; let me go out of your life as quietly as

[1] Reported in 143 N. W. 795.

I came into it, nobody shall ever know that it ever was anything between us."

On December 20, defendant answered this letter with one full of expressions of affection for plaintiff, and of deprecation of his daughter's letter, but apparently accepting plaintiff's invitation to let her go out of his life. December 28 plaintiff wrote again. She forgave the daughter, expressed her great love for defendant, and said that "it is up to you." "If you want me * * * you must come and see me and then we will make our plans * * * if you will be happy if I forget you, * * * do tell me now, and let us not see each other any more." Defendant did not answer this letter, and there was no further correspondence until January 18, 1911. Defendant did not see plaintiff in the meantime. On January 18 he received another letter from the plaintiff, and answered it on the same day. In this letter he complained about rumors, and said: "I am so put out about it that I have made up my mind not to marry anybody at least for a long time." On January 25 defendant left the city and did not return until March 20. Plaintiff testified to conversations over the telephone before he left in which it was agreed that the marriage would be postponed for the time being, but that everything would be all right in the end. There was no correspondence during defendant's absence. After his return and on March 29, plaintiff wrote, expressing her sorrow at the contents of defendant's letter of January 25. She wrote: "Now I feel that you do not love me any more. As marriage without love is simply a crime, so now let it be as you wish." Defendant answered this letter on April 15. He gave reasons for breaking the engagement that were equally sound as reasons for not making it, and in positive terms announced his decision not to form new ties.

Plaintiff seems to have accepted this decision. She and defendant had no further correspondence and did not meet until the trial of the case.

The sole question involved is whether it conclusively appears from the evidence, the material parts of which we have above given, that the parties, by mutual agreement, rescinded or released the contract to marry. We hold that it does.

Order affirmed.