# CHARLESTON.

Frank McKim *v.* E. A. Brast, Thomas Logan and Joseph M. Murphy, Election Board of the City of Parkersburg.

.Submitted May 16, 1923.   Decided May 29, 1923.

1. Elections—*Canvass and Declaration of Result of City Election Held Legal.*

    The charter of a city creating a special election board requires the officers of election to make their returns to the election board within six hours after the closing of the polls at an election, and also makes it the duty of the election board to meet on the day following the election in the city council chamber and canvass publicly the returns so received from all of the polling precincts. Where the election board meets on the night of the election, (in a room formerly used as council chamber by reason of the present council chamber on the same floor of the city building being too small to accommodate the crowd), for the purpose of receiving the returns from the election officers; and, continuing its meeting until five a. m. on the following day, between midnight and adjournment canvasses the returns and publicly announces the result in the presence of a large assemblage of citizens and voters of the city, such canvass and declaration of result will not be declared illegal.   (p. 130).

2. Same—*City Election Board Held Without Power to Recount Ballots, After Returns Canvassed, Result Ascertained, and Certificates of Election Issued.*.

    The charter confers no express authority upon the election board to recount the ballots after the canvass; but assuming such implied authority to exist, which is not decided, the election board is without power to exercise the same upon a demand for a recount made after the returns have been canvassed, the results ascertained, declared and published and certificates of election issued to the successful candidates accordingly.   (p. 130).

Original mandamus by Frank McKim against E. A. Brast and others, constituting the election board of the City of Parkersburg, to compel defendants to make a recount of all the ballots cast for all candidates for city council.

*Writ refused.*

*Merrick & Smith* and *W. G. Peterkin,* for relator.

*James S. McCluer, Marshall & Forrer, C. M. Hanna, and Smith D. Turner,* for repsondents.

Litz, Judge:

The petitioner, Frank McKim, as a candidate for one of the four positions of councilman for the city of Parkersburg, at a general municipal election held on the 3d day of April, 1923, seeks by mandamus to compel E. A. Brast, Thomas Logan and Joseph M. Murphy, constituting the election board of said city, to make recount of all the ballots cast in said city election for the several candidates for city council, including petitioner.

In Chapter 3, Code, the county court is made an election board with supervision over all elections in the county or magisterial districts and jurisdiction over all election contests involving county or magisterial offices. It is also provided by Section 68 of this chapter that: "The commissioners of the county court shall be ex-officio a board of canvassers and as such shall keep in a well bound book, marked 'Election Record', a complete recordr of all their proceedings in ascertaining and declaring the result of every election in their respective counties. They shall convene as such canvassing board at the courthouse on the 5th day (Sundays excepted), after every election held in their county, or in any district thereof and the officers in whose custody the ballots, poll books, tally-sheets and certificates have been placed, shall lay the same before them for examination. * * * * * The board, before proceeding to canvass the returns of the election, shall open each sealed package of ballots so laid before them, and without unfolding them count the number in each package, and enter the same upon their said record. The ballots shall then be again sealed up carefully in a new envelope, and each member of the board shall write his name across the place where said envelope is sealed. After canvassing the returns of the election, the board shall, upon the demand of any candidate voted for at such election, open and examine any one or more of the sealed packages of ballots, and recount the same."

Section 69 and 70 provide for the declaration of results on the canvass or recount by the board of canvassers, and the issuance of certificates of election to the successful candidates accordingly.

Under Section 85, "Every municipal election shall be held in conformity with the provisions of this act, except that the duties herein required of the county and circuit court clerks shall be performed by the municipal clerk or recorder, as the case may be, *and the duties herein required of the commissioners of the county court shall be performed by the municipal council.* * * * * * Municipal officers are hereby required to perform the various duties herein prescribed for county officers in whose stead they act, subject to the same provisions and penalties herein prescribed as to such county officers."

These provisions, therefore, confer upon the council of municipal corporations the power to act as a canvassing board, similar to that to be exercised by the commissioners of the county court, as ex-officio a board of canvassers.

Section 5 of the charter of the city of Parkersburg, as amended by Chapter 20, Acts Legislature 1915, provides for a special election board in lieu of the city council; and in this connection, declares: "For the purpose of selecting and appointing election officers for said city, canvassing the vote and declaring the result of all general, special and primary elections held in said city under this act, an election board is hereby created. Said election board shall be composed of three qualified voters of said city, who shall be persons of good moral character and not addicted to the excessive use of intoxicating liquors; one member of said board shall be appointed by the council of said city, one by the county court of Wood county, and one by the circuit court of said county or the judge thereof. The members of said election board shall be appointed not less than thirty days, nor more than sixty days, prior to each general or special election to be held in said city, under this act, and shall serve until the results of the election for which they were appointed has

been ascertained, declared and all matters pertaining thereto finally determined".

After giving specific authority and power to the election board concerning the manner of holding such elections, Section 5 of the charter further provides that judges of election shall immediately upon the closing of the polls count the ballots and ascertain the number of votes cast in such precinct for each of the candidates, and make return thereof to the election board *within six hours of the closing of the polls.* On the day following the election the election board is required to assemble in the council chamber in the city building and canvass publicly the returns so received from all the polling precincts; and shall make and publish in two of the newspapers of the city, at least once, the result thereof. The respondents, E. A. Brast, Thomas Logan and Joseph M. Murphy, were duly appointed, and served, as election board, under Section 5 of the charter, for a general municipal election held in the city of Parkersburg on the 3d day of April, 1923.

It is alleged in the petition that petitioner was voted for as one of the eight candidates for the four positions of councilman for the city of Parkersburg at said election, the other candidates for councilman being W. H. Dunbar, Kenna B. Stephenson, Okey DeVaughan, Burdette Woodyard, T. C. Zinn, C. W. Boso and R. E. Waid; that on the 4th day of April, 1923, the said respondents, as such election board, "claimed" to have canvassed the returns of said election and to have ascertained that at said election 4953 votes were cast for W. H. Dunbar, 4867 votes were cast for Kenna B. Stephenson, 4642 votes were cast for Okey DeVaughan, 4587 votes were cast for Burdette Woodyard, 4478 votes were cast for petitioner Frank McKim, 3502 votes were cast for T. C. Zinn, 3319 votes were cast for C. W. Boso, and 3303 votes were cast for R. E. Waid; and that respondents accordingly declared that the said Dunbar, Stephenson, DeVaughan and Woodyard were elected as members of said city council for the term of three years, and published a certificate of the result of said canvass.

The petitioner, however, denies that respondents did make,

or have yet made, the canvass of the returns of said election when, where and as such canvass is required by law, and denies that the said respondents have yet determined and declared all questions pertaining to said election.

On the 9th day of April, 1923, petitioner served upon respondents the following notice:

*"To Messrs. E. A. Brast, Thomas Logan and Joseph M. Murphy, and the Election Board of the City of Parkersburg, State of West Virginia:*

"The undersigned candidate for the office of City Council for the said City of Parkersburg for the term beginning April, 1923, and until his successor be elected and qualified, at the recent City election held on Tuesday the third day of April, 1923, hereby requests, asks and demands a recount of the ballots cast at said election, and that you count the ballots cast at said election for the undersigned and also the ballots cast for each and every candidate for the office of Councilman, to-wit, for Burdette Woodyard, K. B. Stephenson, W. H. Dunbar, Okey DeVaughan, C. W. Boso, R. E. Waid, T. C. Zinn, as well as the undersigned, and also that you certify the number of votes cast for the respective candidates so voted for at said election, and in so doing that you reject all illegal votes and count all legal votes.

"That the undersigned charges that errors have been committed in returns made to you and that on a fair count of the votes actually cast he has been duly elected at said election.

"Yours,

"Frank McKim."

In reply to which notice the respondents answered:

*"To Mr. Frank McKim:*

"You are hereby notified that the undersigned, after having sought legal advice, and having been advised by counsel that we have no right under the law to grant your request for a re-count of the ballots cast at the City election held on the 3rd day of April, 1923, are now compelled to, and do advise that it is not within our power to grant your request.

"Dated this, the 11th day of April, 1923.

"E. A. Brast
Jos. M. Murphy
Thos. Logan."

The petition further shows that on the 13th day of April, 1923, petitioner served upon Burdette Woodyard, who had received the lowest number of votes of the four councilmen declared to be elected, a notice of contest by petitioner of the election of said Woodyard as a member of said council, stating the grounds of said contest and denying that said Woodyard had received a majority of 109 votes over petitioner, as appears from the result of said election declared by respondents, and further stating that petitioner had received a majority over said Woodyard of at least 450 votes; that within ten days after said election the said notice of contest was also filed before respondents, where it is now pending.

Respondent moved to quash the alternative writ and dismiss the petition; and also filed their answer thereto. The answer avers that the respondents did in fact, on the 4th day of April, 1923, as such election board, meet in the room, in the city building of Parkersburg, constructed and built for the purpose of a council chamber for the city council of said city, and publicly in the presence of a great number of citizens of the city of Parkersburg, canvass said returns received from all the polling precincts in said city, and having completed the canvass thereof and ascertained the results, made a full and complete tabulation thereof, giving the results of said election by precincts and the total thereof for each candidate for mayor and for members of said council, and forthwith ascertained the result of said election and made publication thereof in two newspapers as required by law. An authenticated copy from the "election record" on which was recorded the said proceedings by respondents, filed with the answer, shows that the canvassing of the returns and the ascertainment and declaration of the results of said election occurred on the 4th day of April, 1923.

The respondents defend their refusal to recount the ballots upon demand by petitioner, on the ground that they are without power or authority in the premises. They contend, first, that the charter of Parkersburg, under which they act, does not expressly confer upon them such power or authority, and that none is implied by law; and, second, that if the law

implies in them this authority, it cannot be exercised upon a demand made for a recount after the returns have been canvassed, result ascertained, declared and published, and certificates of election issued.

Petitioner insists that although the charter under which the respondents were appointed and have acted does not expressly confer upon respondents the authority to make recount of the ballots, yet as the general law conferred such jurisdiction upon the municipal council, whom as an election board respondents have superseded, the same authority should be implied in respondents. It is claimed also that this view is consistent with a proper construction of the original charter and its amendments.

Petitioner also combats the second position of respondents, that any authority they may have possessed to recount the ballots has ceased, with the following propositions: First, that respondents did not canvass the election returns in the city council chamber during business hours on April 4th, 1923, and therefore the alleged canvass of returns and declaration and publication of the result of said election have not yet been legally made; second, that although there had been a legal canvass, and ascertainment, declaration and publication of the result prior to the demand by petitioner for a recount, yet by reason of the pending contest the respondents' implied jurisdiction in the premises still exists.

Considering petitioner's first proposition: It appears that respondents met on the night of April 3d, 1923, in the city building of Parkersburg to receive returns from the election, and that the room then used by the city council as its council chamber being too small for the crowd of citizens gathered, the meeting was held on the same floor in the room originally constructed, and for many years used, for the council chamber; that respondents, as had been the custom in previous elections, continued their session into the following day; that during said meeting between midnight and five o'clock a. m. on the 4th of April, after receiving all of the official returns, except from precinct No. 17, which was obtained verbally, they canvassed the same and announced the result to the large gathering of citizens present; that later in the day,

after respondents had received the official returns from precinct No. 17, which tallied with the verbal report, they completed the canvass; and thereafter, about five o'clock p. m., on the same day, met in the city building and signed certificates declaring the results of the election which were caused to be published in the Parkersburg News and Parkersburg Sentinel in their issues of April 5th, 1923.

Evidently the purpose of requiring the canvass to be made in the council chamber is to give it publicity. Then this purpose was advanced rather than retarded by making the canvass in the larger room nearby. There is no claim that any one desiring to attend the meeting was misled by its being held in the former, rather than the present, council chamber. Again there would seem to be no reason why the election board could not legally canvass the returns in the early hours of the day following the election at a time when the greatest number of citizens would be present, due to the fresh reports from the election results. It does not appear that any one except petitioner and the attorney of a defeated candidate were on watch for a canvass during business hours of April 4th, and neither of them deny information on that day of the canvass as actually made.

The petitioner in his affidavit states that he went to the city building about seven-thirty p. m. to hear the election news and remained in and about the entrance corridor and the adjoining city clerk's office until about ten p. m., when he went home; "that he did not go upstairs owing to the great crowd". It may be that his decision to remain aloof from the great crowd and retire to his home for the night was due to unsatisfactory election news. He does not speak of any great crowd gathered at the city building the next day during business hours when he says he was on the lookout for the election board. He states that the members of the board spent a considerable portion of the afternoon in the office of the city clerk behind the counter and grill work "apparently engaged in writing up, or in overseeing the writing up, of their records", but that he did not see any evidence of their having before them, or of their having had before them at that time any of the packages of ballots cast

at, or the poll books or tally-sheets, used in, the election. This certainly put petitioner on notice that respondents were "engaged in writing up, or in overseeing the writing up, of their records" of the election results. He does not say in his affidavit that he had no knowledge or information at that time that the respondents had not canvassed the returns and announced the result at their meeting during the early hours of April 4th; nor does he claim to have been misled or injured by the canvass having been made in the early morning rather than during business hours on April 4th.

We, therefore, are of opinion that, although the canvassing of the returns by respondents before business hours at a room other than that then being used as the council chamber by the city council, may constitute irregularities, yet such irregularities, under the circumstances, are insufficient to invalidate the canvass or the declaration and publication of the result thereof. *Gregory v. Hubbard,* 123 Va. 510; 9. R. C. L. 1111; *Stockton v. Powell,* 29 Fla. 1; 10 Sou. 688; 15 L. R. A. 42. "In the absence of injury or fraud it is not a valid objection to a canvass that it was made in a place other than that provided by law, where there is good reason for the change. But if the canvassers met at an unusual time and place with fraudulent intent, this will render their whole proceeding irregular and void." 20 *C. J.* 200.

The respondents' canvassing of the returns, ascertainment, declaration and publication of the result, and the issuance of certificates of election to the candidates accordingly successful, constitute conclusive evidence of the election and title of the holders of such certificates to office until declared otherwise by a court of proper jurisdiction in appropriate proceedings. These matters cannot be questioned collaterally. 9 R. C. L. 1113; *Trunick v. Northview,* 80 W. Va. 9.

Assuming then the respondents would have had the implied authority to recount the ballots in a proper case, which we do not decide, under the holding of *Duty v. Thompson,* 79 W. Va. 415, we think the right to exercise that authority by respondents, or to demand its exercise in behalf of petitioner, had passed with the canvassing of the returns, ascer-

tainment, declaration and publication of result prior to such demand.

We see no force in the attempted distinction by counsel for petitioner in oral argument between this and the Duty case, that the implied authority here contended for adheres to the respondents, pending contest. In the Duty case the court held the power to recount *expressly* conferred upon the county court as a canvassing board, under Section 68, Chapter 3 of the Code, could not be exercised after canvassing of the returns, ascertainment and declaration of the result. Judge Poffenbarger, in delivering the opinion of the court, says: "A time limit is necessary, and to require a candidate to make his demand for recount, or waive it, before a declaration of the result is not unreasonable".

For the reasons stated, the peremptory writ of mandamus is refused.

*Writ refused.*