# CHARLESTON.

STATE *ex rel.* W. G. PETERKIN *v.* CITY COUNCIL OF
CITY OF PARKERSBURG.

Submitted January 9, 1924.   Decided January 29, 1924.

1.  MUNICIPAL CORPORATIONS—*Grounds of Petition for Removal of Officer Must Relate to Fitness or Official Conduct.*

> Under Section 21 of the Charter of Parkersburg (Chapter 83, Acts 1911), providing for the removal of the holder of any elective office at special election to be called by the council upon a sufficient petition for the purpose being submitted to it by the city clerk, which shall contain a "general statement of the grounds" for which the removal of the officer is sought, and be signed by electors entitled to vote for his successor equal in number to at least twenty per centum of the entire vote for all the candidates for the office of mayor cast at the last preceding general municipal election, the grounds to be stated in the petition must relate to the fitness of such officer to hold office or his official conduct therein. (p. 507).

2.  SAME—*Affidavit to Petition for Removal of Officer Held Sufficient.*

> The Act further provides that a signer of each "paper" making up the petition shall make affidavit thereto that the statements therein are true as he believes, and that each signature to the paper appended is the genuine signature of the person whose name it purports to be. One affidavit to each "paper" will satisfy this requirement, although the paper may

be composed of several sheets bound together containing signa-
tures of the voters.  (p. 513).

3.  SAME—*Inadequacy of Funds No Excuse for Refusal to Hold
    Election to Remove Officer.*

    The council will not be permitted to defend its action in re-
    fusing to call such election when a proper petition for the
    purpose has been submitted to it by the city clerk, on the
    ground that the city is without available funds of the current
    fiscal year to meet the necessary expense of holding the elec-
    tion.  (p. 513).

(McGINNIS, JUDGE, dissenting.)

Original mandamus by the State, on the relation of W. G.
Peterkin, against the City Council of City of Parkersburg.

*Writs refused.*

*W. G. Peterkin* and *Merrick & Smith,* for relator.
*Smith D. Turner* and *James S. McCluer,* for respondent...

LITZ, JUDGE:

At a municipal election held April 3d, 1923, in the city of
Parkersburg for the election of a mayor and four councilmen
to serve three years term of office beginning April 16th, 1923
J. S. Dunn, as mayor, and Okey DeVaughn, W. H. Dunbar,
K. B. Stephenson, and Burdette Woodyard, as councilmen,
were, on the face of the returns shown, and by the election
board of the city declared, to have been elected; and each
thereafter having qualified, since the 16th day of April, 1923,
has been exercising the powers of his respective office.

In the election J. S. Dunn, as candidate for mayor, was
opposed by W. E. Stout, and Okey DeVaughn, W. H. Dun-
bar, K. B. Stephenson and Burdette Woodyard, as candidates
for councilmen, were opposed by four other candidates; the
said Burdette Woodyard receiving the lowest number of
votes of any of the four successful candidates for council-
men.

Soon after the election board had ascertained, declared
and published the results of the election, as shown by the
face of the returns, W. E. Stout and Frank McKim, de-
feated candidates for mayor and councilmen, respectively,
demanded a recount by the board of the votes cast.  This

demand for recount having been refused by the board, W. E. Stout obtained from the circuit court of Wood county an alternative writ of mandamus for the purpose of compelling the board to make a recount of all the votes cast at the election for mayor; but upon a hearing thereof the peremptory writ was denied. To this ruling of the circuit court a writ of error was granted.

On May 9th, 1923, Frank McKim secured from this Court an alternative writ of mandamus to compel a recount by the election board of all of the votes cast in the said election on behalf of the several candidates for councilmen; but the peremptory writ was refused in this proceeding on the ground that the election board was without power to make recount, no demand therefor having been presented until after the returns had been canvassed, the results ascertained, declared and published, and certificates of election issued to the successful candidates. *McKim* v. *Brast,* 94. W. Va. 122, 117 S. E. 875. Thereafter Stout's writ of error against the election board, upon his motion, was dismissed. In the meantime Stout and McKim instituted, before the election board, contest proceedings against Dunn and Woodyard which, having been decided adversely to the contestants, were by them appealed to the circuit court of Wood county, where the same are now pending.

In the month of November, 1923, separate petitions were circulated among the voters of Parkersburg for the removal of Dunn as mayor and Woodyard as one of the councilmen of the city, under Section 21 of the city charter, which in part provides:

> "The holder of any elective office may be removed at any time by the electors qualified to vote for a successor of such incumbent. The procedure to effect the removal of an incumbent of an elective office shall be as follows: A petition signed by electors entitled to vote for a successor to the incumbent sought to be removed, equal in number to at least twenty *per centum* of the entire vote for all candidates for the office of mayor cast at the last preceding general municipal election, demanding an election of a successor of the person sought to be removed shall be filed with the city clerk, which petition shall contain a general statement of the

grounds for which the removal is sought. The signatures to the petitions need not all be appended to one paper, but each signer shall add to his signature his place of residence, giving the street and number. One of the signers of each such paper shall make oath before an officer competent to administer oaths, that the statements therein made are true as he believes, and that each signature to the paper appended is the genuine signature of the person whose name it purports to be. Within ten days from the date of filing such petition, the city clerk shall examine and from the voter's register ascertain whether or not said petition is signed by the requisite number of qualified electors, and if necessary, the council shall allow him extra help for that purpose, and he shall attach to said petition his certificate showing the result of said examination. If, by the clerk's certificate, the petition is shown to be insufficient, it may be amended within ten days from the date of said certificate. The clerk shall, within ten days after such amendment, make like examination of the amended petition and if his certificate shall show the same to be insufficient, it shall be returned to the person filing the same; *without prejudice, however,* to the filing of a new petition to the same effect. If the petition shall be deemed to be sufficient, the clerk shall submit the same to the council without delay. If the petition shall be found to be sufficient, the council shall order and fix a date for holding said election, not less than thirty days nor more than forty days from the date of the clerk's certificate to the council that a sufficient petition is filed.'' (Chapter 83, Acts of Legislature 1911.)

The petition for removal of Dunn, purporting to have been signed by 3219 qualified electors, and the petition for the removal of Woodyard, by 3192, were on the 28th day of November, 1923, submitted to and filed with the clerk of the city. The total number of votes cast at the election for both candidates for Mayor in the election was 8730.

The petition for the removal of Woodyard, for grounds, states that, ''At said election there were eight candidates for city council, four to be elected, and that said Woodyard was shown on the returns to have received the lowest vote of the four candidates declared to have been elected, and that one, Frank McKim, another candidate, was shown to have received the highest vote of the four other candidates;

that an apparent majority of the votes cast at said election was procured by fraud to be shown on the returns as having been cast for said Burdette Woodyard, and that at said city election illegal and fraudulent ballots were used and counted for said Burdette Woodyard in the election returns in such numbers as to show on the face of said returns a majority of votes for said Woodyard over said McKim, when in truth and in fact the majority of the qualified voters voting at said election had not voted for said Woodyard for said office but had voted for the said Frank McKim, another candidate for said office; that the declared result of said election is not a true expression of the will of the voters; and that the said Burdette Woodyard is now holding the office of member of the city council of the city of Parkersburg to which he was not honestly and fairly elected."

The petition for removal of Dunn as mayor, for grounds, likewise states: "That an apparent majority of the votes cast at said city election of April 3d, 1923, was procured by fraud to be shown on the returns as having been cast for said J. S. Dunn, and that at said city election illegal and fraudulent ballots were used and counted for said J. S. Dunn in the election returns in such numbers as to show on the face of said returns the majority of votes for said Dunn, when in truth and in fact a majority of the qualified voters voting at said election had not voted for said Dunn for the office of mayor, but had voted for W. E. Stout, the other candidate for said office; that the declared result of said election is not a true expression of the will of the voters; and that the said J. S. Dunn is now holding the office of mayor of the city of Parkersburg to which he was not honestly and fairly elected."

On December 7th, 1923, the city clerk certified that the petitions for the removal of Dunn and Woodyard had been signed, respectively, by 2139 and 2124 qualified electors; and having submitted the same to the council on December 11th, 1923, the latter refused to order a special election as requested therein. The following are some of the reasons stated in its order of refusal: (1) The petitions do not contain grounds for removal, as the legislature did not intend that the right of removal should be exercised for alleged

fraud in the election in order to afford a defeated candidate a second or another chance at the expense of the tax payers; (2) The petitions do not contain a sufficient number of sig-natures after excluding the names of the electors appearing on separate sheets of paper, inserted in the petitions, which are without the oath of one of the signers thereto, showing that the statements therein made are true as he believes and that each signature thereto is the genuine signature of the person whose name it purports to be; (3) The city is with-out funds with which to defray the expenses of the election, amounting to approximately $2,600.00, and being without such available funds, has no power to incur the indebtedness.

W. G. Peterkin (of counsel representing Stout and McKim in their contests with Dunn and Woodyard), as a resident, citizen, tax payer, and qualified voter of the city of Parkers-burg, then presented his petitions to this Court praying the issuance of alternative writs of mandamus directed to J. S. Dunn, mayor, and Okey. DeVaughn, W. H. Dunbar, K. B. Stephenson and Burdette Woodyard, members of the coun-cil, commanding them to order a special election as requested in the recall petitions, or to show cause, if any they can, why they should not do so.

The alternative writs having been awarded, we must now determine whether peremptory writs should go.

The respondents in their returns to the alternative writs, as one defense thereto, say that neither of the petitions con-tains grounds for removal as contemplated by the city char-ter. In answer to this defense the petitioners rely upon the following cases: *State ex rel Noyes* v. *Lane,* 89 W. Va. 744; *State* v. *Houston,* 94 Neb. 445, 143 N. W. 795, 50 L. R. A. (N. S.) 227, and note; *State ex rel Gapen* v. *Somers,* 35 Neb. 322, 53 N. W. 146; *Conn* v. *City Council of Richmond,* 17 Cal. App. 705, 121 Pac. 714, 717; *State ex rel Lewis* v. *Turney, et al.* 97 *Conn.* 496, 117 Atl. 499, 501.

The first case, decided by a divided court, involved peti-tions for the removal of the city manager and councilmen of the city of Wheeling, under city charter provisions similar to those here under consideration. The petition, for the re-moval of Councilmen in that case stated: ''From common

report, supported by the findings of the Ohio County grand jury on September 23d, 1921, as ground for which the removal of said councilmen is sought, in the recent city election held in the said city on May 26th, 1921, illegal and fraudulent ballots were used and counted for each of said councilmen in the election returns in numbers sufficient to make a material difference in the result of said election, as to each and every councilman, and to prevent said result from being the true expression of the will of all the voters''. In the petition for the removal of the city manager it is set forth that ''from common report, supported by findings of the Ohio county grand jury of September 23d, 1921, as the grounds for which the removal of said H. C. Craigo as city manager is sought, the said H. C. Craigo knowingly participated in illegal and fraudulent acts at and in connection with the city election which was held in said city on the 26th day of May, 1921, and that he knowingly and intentionally benefited by the result of such fraudulent acts of himself and others by the use and counting of illegal and fraudulent ballots in said election.''

It does not appear from the returns of respondents in that case or otherwise that the sufficiency of the grounds for removal was raised, besides, there is a striking difference between the grounds there relied upon and those presented in this case.     Both petitions in the former case alleged that the charge of fraud was supported by the findings of the grand jury, and it was shown that at least one of the officers sought to be removed was under indictment for such fraud; while in the present case no facts are stated to sustain the fraud nor is it alleged that the officers sought to be removed in any wise participated therein or were continuing in office with knowledge thereof.   Not only was the fraud charged in the former case of such character as to call for indictments against the perpetrators thereof, including some of the officers sought to be removed, but was so serious as to prompt petitions for the removal of all the officers.   There is another distinction between the two cases.   The proceeding in the Noyes case was brought to compel the city clerk, whose only power is to ascertain from the voter's register ''whether or

not the petition is signed by the requisite number of qualified voters", to certify the petition to the council. This the court required him to do. The case here is against the council who are directed to order and fix a time for holding the election if the petition, after it has been submitted by the clerk to the council, "shall be found to be sufficient."

The petition in *State* v. *Houston,* where the council was compelled by mandamus to call the election, demanded removal of the mayor of Nebraska City for the reason that in attempting to discharge the duties and trusts of his office he had been grossly extravagant with the public funds of the city; manifestly partial, prejudicial and malevolent in exercising the prerogatives of said office; and guilty of nonfeasance and malfeasance in office. The recall statute there involved provides that when the petition had been presented to the council by the city clerk with his certificate showing that it had been signed by the requisite number of qualified electors, "the council shall order and fix, without delay, a date for holding the election."

In the case of *State ex rel Gapen* v. *Somers,* it was held that under a statute providing that "a commissioner of health shall be appointed by the mayor, subject to the approval of a majority of the council, and shall hold office for a term of two years from the date of the appointment, unless sooner removed or retired," such commissioner of health may be removed by the mayor without preferring charges against him; the court saying: "where the right of removal is reserved in the appointing power, without the necessity of making charges, it may be exercised in the discretion of the appointing power, even before the expiration of the term." This case has no application.

The grounds relied on in *Conn* v. *City Council of Richmond,* where the council was compelled to call an election for the removal of certain of its members, were: (1) that the six councilmen sought to be removed had been guilty of malfeasance in office; (2) that they had been parties to a political agreement by which the office of city engineer was traded in consideration of other appointments; (3) that such political trafficking was contrary to the spirit of the charter and a

detriment to the public interests; (4) that the accused council-
men had united in denying the petition of the majority of the
qualified electors in matters of public policy; and (5) that the
signers of the petition for recall no longer desired the services
of those particular councilmen. Referring to the recall pro-
visions of the city charter which the court had under con-
sideration, the opinion states: "Within ten days from the
date of the filing of such petition the clerk shall examine and
ascertain from the records of the registration whether or not
it has been signed by the requisite number of electors; and
the clerk, if he find the petition to be sufficient, shall attach
to the same his certificate showing the result of his examina-
tion, and thereupon submit the petition to the council. It
is then made the duty of the council to fix a date, and
order an election for the recall of the officers sought to be re-
moved."

In *State ex rel Lewis* v. *Turney, et al.,* where the council
was compelled by mandamus to call an election for the re-
moval of one of its members, the city charter required, as the
initial step in the recall procedure, the filing with the city
clerk by an elector of his affidavit containing the name of
the council member to be removed and a statement of the
grounds for removal. It further provided that when the
clerk had certified the petition to be sufficient and submitted
the same with his certificate to the council at its next meet-
ing "the council shall thereupon, within ten days of the re-
ceipt of the town clerk's certificate, unless the member or
members whose removal is sought, shall have resigned, order
an election to be held." The council refused to call the elec-
tion, notwithstanding the filing of the petition certified, by
the clerk to be sufficient, on the claim that one of the grounds
in the affidavit of the elector instituting the proceeding was
untrue. The affidavit charged that the councilman sought
to be removed had failed to perform the duties of his office in
the manner desired by the majority of the electors of the dis-
trict he represented, that he refused and neglected to comply
with the wishes and requests of the electors to vote for the re-
scission of a resolution passed by the council discharging the
town manager, although the electors had petitioned him to do

so; and that a large majority of the electors of his district considered that he no longer properly represented them.

. It will be observed that the grounds for removal in the foregoing cases, although general in statement, involve the moral fitness or official conduct of the officers sought to be removed. It may be, however, that the grounds in the *Noyes* case were not sufficiently specific to charge moral turpitude on, the part of all the officers sought to be removed; but, as before stated, this question was not raised,—the only defense being a denial of the charges,—and the clerk against whom the writ was issued had been given no discretion except in ascertaining whether the required number of electors have signed the petition. The fourth point in the syllabus holding that the courts may not pass on the grounds is *obiter*.

Petitioner contends that it is entirely for the electors, and never for the city council or the courts, to determine the sufficiency of the grounds alleged for removal; and of course, that it would make no difference whether any grounds at all were stated. We cannot concur in this view. *Conn* v. *Richmond*, relied on by petitioner, states that: ''The purpose of the recall statutes providing for a recall election is to give the people of the municipality the right to cut short the official term of every elected officer whose conduct in office is, for any cause, unsatisfactory or distasteful to the body of the community''.

In *Hilzinger* v. *Gilman*, 56 Wash. 278, 105 Pac. 471, referring to recall provisions of a municipal charter requiring the petition to contain ''a general statement of the grounds for which the removal is sought'', and making it compulsory on the council, upon receiving the petition from the clerk, to call the election, it is said: ''The charter contemplates a recall of the officer at any time his *official conduct* is not responsive to the wish or will of the majority of the electors in his precinct or ward.'' To adopt the view of petitioner would make it unnecessary for the petition to contain any real grounds. The official could be recalled as well on account of his religious beliefs or political affiliations, as for corruption or malfeasance in office; and if those who desired his removal were unsuccessful in one election the pro-

cess might be continued indefinitely at the expense of the tax-payers. And suppose the faction seeking power through recall of those in office should be successful in the first, second or third attempt, then the ousted faction could in turn employ the same procedure in repeated trials to regain its lost pres-tige, and the interminable wrangle and turmoil would go on. This would result in the fostering and maintaining of political feuds to the detriment of society and the great expense of tax payers. It is shown that one of such elections in Parkers-burg would cost the tax payers at least $3000.00, and it is also claimed that the city has no available funds to meet this ex-pense. With other evidence presented by respondents to establish their charge that the removal process is being used here in the interest of political factions for contesting the elections of J. S. Dunn and Burdette Woodyard, in order to place Stout and McKim in office, is an article written by the petitioner and published in a Parkersburg newspaper prior to the circulation of the recall petitions. This article, in part, states:

> "Fortunately the City Charter provides a remedy, better and more effective than any process through the courts:
>
> "Section 21 of the Parkersburg City Charter pro-vides for the removal of the holder of any elective office at a special election to be called in accordance with the procedure therein laid down: This is what we ordinar-ily refer to as the 'Recall'.
>
> "This procedure we propose to invoke as the best and promptest remedy available.
>
> "Two separate removal or recall petitions will be re-quired,—one for Dunn and one for Woodyard.
>
> "The names of the officers sought to be removed will go upon the ballot as candidates at the special election unless they request otherwise in writing; the names of Stout and McKim will go upon the ballot, as their op-ponents."

Whether the process of removal is being used here by the political adherents of Stout and McKim as a method of con-test in order to seat these defeated candidates, we need not determine. Such, however, would present a natural situation under petitioner's construction of the statute. If the statute

was intended for this purpose as well as for the removal of elected officers, it should have so indicated. The legislature, therefore, must have meant "grounds" involving the fitness or official conduct of officers sought to be removed, as these are the only grounds recognized under the general law. As already indicated, we do not think the petitions here are sustained even by the cases referred to from other states, where the statutes involved make it mandatory on the council to order the election upon receiving from the city clerk the petition accompanied by the latter's certificate showing the required number of electors signing. If we say no grounds need be stated, why not as well hold that the council must call the election when the petition is filed, whether or not it has been signed by the requisite number of voters? The law must be given a reasonable construction. It is true the grounds need not be stated with the particularity required in court, and that a "general statement" thereof is sufficient; but this does not necessarily change the nature of the grounds or dispense with them entirely. As indicating that this process was intended for removal of an officer in the true sense, after having been duly elected, and not as a mere method of contest on the ground that he had not been so elected, the statute in its closing sentence provides that "the said method of removal shall be cumulative and additional to the methods heretofore provided by law."

The petitions are further questioned because of the fact that the affidavit required to be appended to each "paper" making up the petition does not appear on every sheet containing signatures of the electors signing. For this reason it is insisted that all signatures appearing on sheets without such affidavit should be excluded. The statute does not say that each sheet shall contain the affidavit but only the "paper", which may be composed of several sheets bound together, shall be sworn to by one of the signers thereto. Of course, the affiant should know the genuineness of the signatures to the entire paper; and the affidavit should indicate with sufficient certainty that the signatures to each sheet were affixed while it was a part of the "paper".

Respondents further defend on the ground that the city is without available funds to meet the necessary expense of

holding the election, amounting to about $3,000.00, and that by Section 12, Chapter 28-A of the Code, the council is forbidden to contract an indebtedness which cannot be discharged from the available funds for the current fiscal year. Under this section it is unlawful for the council of a municipal corporation "to expend any money or to incur any obligation or indebtedness which it is not expressly authorized by law to expend or incur"; or to "make any contract, express or implied, the performance of which, in whole or in part, would involve the expenditure of money in excess of funds legally" at its disposal. But respondents in ordering and holding such election, when a proper petition has been submitted, would be acting in obedience to positive mandate of law. Hence the statute, directed at the voluntary acts of administrative officers with the view of curbing a tendency to extravagance, has no application. *State ex rel Sprague* v. *County Court*, 93 W. Va. 481, 117 S. E. 135.

The petitions for removal not stating any grounds in contemplation of the statute, as we believe, the peremptory writs will be refused.

*Writs refused.*