## STATE EX REL. MILTON FASTEEN v. ALBERT E. BICKFORD.[1]

December 21, 1934.

No. 30,180.

*Luke F. Burns,* for appellant (respondent below).
*Rosemeier & Montague,* for respondent (relator below).

[1]Reported in 258 N. W. 11.

136

STONE, JUSTICE.

*Mandamus* decided below for the petitioner. Respondent appeals from the order denying his motion for amended findings or a new trial.

Virginia is a city of the third class governed by a home rule charter. Section 121 of the latter sets up a procedure for the recall of elective officers. Pursuant thereto, March 26, 1934, Mr. Fasteen, the present respondent, and many others (on whose behalf as well as his own the petitioner sues) filed with Mr. Bickford, as city clerk, a petition for the recall of Wilfred M. Lofback, an alderman at large.

Mr. Bickford, within the period fixed by the charter, found the original petition for the recall of Mr. Lofback to be insufficient. An amended petition was promptly filed and also found insufficient by Mr. Bickford. The decision below was, on the facts, that the original and amended petitions together were signed by the requisite number of voters and so were sufficient. Accordingly, a peremptory writ was ordered directing Mr. Bickford, as clerk, to submit the petitions to the city council, so that a recall election would follow as matter of course.

All other things aside, there is one fatal defect in the petitions which requires a reversal. Section 121 of the charter of Virginia provides that "one of the signers to each such paper shall make oath  *  *  *  that the statements therein made are true, and that each signature to the paper appended is the genuine signature of the person whose name purports to be thereunto subscribed."

We have examined the petitions. From the standpoint of their sufficiency they must be considered as a unit. But in fact they consist of 60 separately bound petitions. Each consists of three sheets of paper. The first is the petition proper, containing the prayer and a statement of the grounds upon which the removal of Lofback was sought. Thereunder are the lined spaces for signatures, which continue over onto the other pages. The three sheets are stapled or wired together under a backer or document cover, the method being that commonly used in binding legal documents. While each separate sheet cannot be considered a "paper" within

the meaning of the charter, we are yet constrained to hold that each group of sheets, usually three, bound under one document cover, must be considered a separate "paper." There are 60 such papers or documents, but only 48 verifications. Apparently someone, after the petitions had been circulated and signed, fastened them together in groups as already indicated and attached a single verification to the one at the back of the bundle, intending it to answer as a verification for each and all of the papers or documents so bound together in one bundle. In one instance six separately bound documents are fastened together and verified as a unit. In another case, five, and still another, three, are so fastened together and so attempted to be verified.

We cannot hold that section 121 of the charter in its requirement of a verification of each separate "paper" was intended to permit any such loose practice. It was doubtless contemplated that any particular "paper" would circulate in a certain and somewhat limited neighborhood and that it would be taken from signer to signer by some interested individual or passed from one voter to another. Very likely it was thought that some signer on any one "paper" would know every other and could say that all of the signatures to the particular "paper" which he signed were genuine. We must give the language effect according to its plain purpose if we can. We hold that the charter requirement is that each separate petition or paper carry its own verification. Were it otherwise it would be permissible for one to take any number of the separately bound papers, fasten them together, and satisfy the charter provision by making a single verification cover by its terms each of the papers to which it was attached. Such a holding would permit a demoralizing looseness which is certainly not within the contemplation of the charter. Such a practice would deprive the verification of all value and put a premium upon careless swearing. Carried to its logical conclusion, the argument for a construction of the charter sufficiently loose to admit such wholesale verification would permit the entire batch of 60 separately bound papers to be verified by one person. Nothing would more obviously thwart both literal meaning and plain purpose of the charter provision.

138

Our view that the verifications are insufficient in the respect indicated does not run counter to the decision in State ex rel. Peterkin v. City Council, 95 W. Va. 502, 121 S. E. 489. The holding there was simply that each separate sheet of signatures need not be verified if several of them are bound together securely and there is but one verification. We find nothing in that opinion which even by inference will support the view that the verifications here in question comply with the determinative charter provision.

Without going into the arithmetic of the case concerning the number of the petitioners, it is sufficient to say that the defect of verification is such that in any view the petition cannot be held to carry the verified signatures of enough voters to authorize the holding of a recall election.

It follows that the order under review must be reversed and the case remanded with directions to discharge the writ.

So ordered.