STATE *ex rel.* CLAIR L. COOK *et al. v.* EDGAR C. LAWSON, AUDITOR, *et al.*

(No. 6986)

Submitted March 4, 1931. Decided March 10, 1931.

R. D. *Bailey,* for relators.
T. C. *Townsend,* for respondents.

LIVELY, JUDGE:

The superintendent of schools of Wyoming County, and the district boards of education of that county, relators in this mandamus proceeding, ask that the state auditor and state sinking fund commission be required to pay over to the sheriff of that county $89,398.24, the amount levied in the year 1930, for free school purposes and collected by the auditor from the public utilities of that county, asserting that they have made requisition on the auditor for such payment, in the manner prescribed by law, which payment has been refused. It is averred in the petition that the auditor has diverted the said sum and paid it over to the commission on certain indebtedness of the county.

The auditor and the commission reply that the auditor had, before such requisition was made by the county superintendent dated February 11, 1931, paid to the sheriff of Wyoming County by warrants on the state treasurer all the money in his hands so collected, who, upon delivery to him of one of the said warrants, endorsed it over to the state sinking fund commission to pay indebtedness accruing by reason of road bonds issued on behalf of three of the magisterial districts of Wyoming County.

It appears that the sinking fund commission, on December 9, 1930, wrote to the sheriff directing his attention to his promises to pay it money due to meet current payments of interest on the bonds as soon as tax collections began, and his failure to do so, and calling upon him to cooperate by sending the balances due as of December 1, 1930, as early as possible, and stating that it had carried overdrafts for him for several months. He replied, two days later, that he was unable to send the money levied for that purpose, because of local demands for outstanding drafts which had about exhausted his collections. In his letter he inquired: "Do you think it possible to draw on the Public Utility Funds and pay the balances due the sinking fund now? Our Public Utility valuations were increased for the year 1930. If any of this money could be transferred and applied to our credit in your department, it would certainly be appreciated. I hope this can

be done. Assuring you that anything you can do in this matter will be appreciated, I remain," etc. No reply seems to have been made to this letter. However, the sheriff, by affidavit, says that on or about the ...... day of February, 1931, he went to Charleston at the request of the auditor, accompanied by his office deputy Shannon, and was told by the auditor that Wyoming County owed to the state for interest and sinking fund on its road bonds about the sum of $134,-000.00; and that there was due the boards of education for school purposes $138,398.88 less $12,680.14; that the auditor had made out several warrants, and informed him that the indebtedness to the state would be deducted from the school money due from the public utility tax to the schools, and that he permitted the auditor to retain all of the money except one warrant for $37,490.06, and endorsed over and back to the auditor the warrant made out to the sheriff for $134,000.00. He says he turned this money over in this manner without authority or order of the county court; that he came to the auditor's office by request of the auditor and did what he thought best for the county, and it was only by so doing he was able to get any money at all; that he did not check any of the figures made either for the indebtedness due the sinking fund or the schools, except as to the balance as shown by the settlement of 1930. He says that there are no available funds to carry on the schools which will be stopped unless this utility money is made available. It appears that there are ten district high schools and 200 grade schools now in operation. His affidavit is not controverted.

The defense of respondents, as shown by the return, is that the warrant for $134,708.70 made payable to the sheriff dated February 3, 1931, was by him endorsed over to the state sinking fund commission payable to its order. The warrant was so endorsed. The state sinking fund commission receipted to the sheriff on February 2, 1931, for the state warrant "signed" to it for $134,708.70 for payment of balance due as of June 30, 1930, settlement and overdrafts. It seems that the date of the receipt of the warrant is prior by one day to the date of the issuance of the warrant. Probably that was a clerical error. Therefore, respondents say that the money

has been paid to the sheriff, and by him diverted from the schools, and they are not responsible for his action in so doing.

Relator argues that there is no authority of law for the diversion of the funds levied for the schools to the payment of interest on road bonds of the three districts; and unless this money so diverted is paid back to the treasurer to be expended for school purposes, the schools will close—a public calamity. On the other side, it is argued that the sheriff is the person who made the diversion, and that to permit the county to be delinquent in payment of interest on its bonds, and to the sinking fund for their retirement at maturity, would tend to destroy the credit of the state in the bond market—a public calamity.

It is quite evident that the sinking fund commission was anxious to have the sheriff pay into it the money levied for the purpose of paying the interest and sinking fund to take care of the bonds—a commendable anxiety. The sheriff had used that money so levied to take care of local demands, and wanted to know if it was possible to use the utility tax money by transferring it to the sinking fund. The sheriff was invited to the auditor's office (the auditor knowing the situation) where all of the figures had been made showing the amount due the sinking fund and the amount owing the county from the public utility tax, and warrants drawn in accordance therewith. The purpose was apparent. The warrant for $134,708.70 being the exact amount of the debt due the sinking fund was intended to pay that debt. It was already prepared and awaiting the endorsement of the sheriff. It is evident that there was concurrent action by the auditor, the commission and the sheriff to the end that the sinking fund debt would be paid out of the tax money due the county and districts derived from the public utilities and in the hands of the auditor. All were cognizant of the purpose. The form of accomplishing that purpose is unimportant. Courts look to the substance and not to form. In the efforts of the parties to the transaction to do what they thought best for the inerests of the county and the state, they overlooked the statute which provides that tax money levied and collected for a

particular purpose can be expended for the purpose for which levied, *and no other.* Revised Code 1931, 11-8-12.

We are of the opinion that the case warrants the issuance of mandamus to correct the error. In so doing we impute no criticism of the parties involved, assuming that they were unconscious of the error, and acting in good faith. The petition asks for the payment of $89,398.24, the amount claimed to be due the school districts, and the writ will be awarded for that amount only.

*Writ awarded.*