THE COUNTY COURT OF MERCER COUNTY, *etc., et al.* v. GEORGE P. ALDERSON, *State Tax Commissioner*

(No. 9408)

Submitted September 22, 1942. Decided October 27, 1942.

*Roscoe H. Pendleton* and *Ajax T. Smith,* for petitioners.
*William S. Wysong,* Attorney General, and *Eston B. Stephenson,* Special Assistant Attorney General, for respondent.

RILEY, JUDGE:

The County Court of Mercer County and R. G. Thomason, C. I. Johnston, and A. C. White, commissioners thereof, seek by a peremptory writ of mandamus to compel George P. Alderson, State Tax Commissioner, to approve the tax estimate and proposed levy for Mercer County for the fiscal year 1942-43.

The County Court of Mercer County sought approval by respondent, the State Tax Commissioner, of its levy

estimate for the current fiscal year 1942-43. The Tax Commissioner approved it, subject to the county court's inclusion therein of an item of $2,500.00 for "transportation and support of patients" admitted to state tuberculosis sanitariums at the direction of the County Public Assistance Council of Mercer County and other agencies of the State Department of Public Assistance. The levy contemplated by such estimate is for the maximum amount which may be laid under the law for current purposes, and the Tax Commissioner's certificate of approval, requiring such inclusion "as a mandatory responsibility of the county court" suggested that "the item of appropriation for Glenwood 4-H Project and/or the item shown as contingencies be correspondingly reduced to include" the said item of $2,500.00. To these two items the Tax Commissioner has added a third, namely, $3,500.00 for expense of "Memorial Building."

The levy estimate filed as an exhibit with relators' petition shows that the county court has allocated $27,950.00 for the general relief fund, which amount admittedly is fifteen per cent of the total sum to be raised by levy, and admittedly is insufficient to meet and adequately take care of the costs of general relief for Mercer County. It likewise shows the allocation of $5,000.00 for contingencies and $5,000.00 for Glenwood 4-H Project.

Relators contend that the county court has complied with the provisions of Section 5, Article 10, Chapter 1, Acts West Virginia Legislature, First Extraordinary Session, 1936, (designated as Public Welfare Law of 1936), as amended by Chapter 74, Acts, Regular Session, 1941, (Michie Code, 9-10-5), by providing the sum of $27,950.00 for general relief. It is the position of respondents that it is mandatory upon the county court to allocate $2,500.00 for tubercular patients and that the county court is legally required to levy an amount in excess of fifteen per cent "when needed for general relief of the county where sufficient funds are available after including and providing for the mandatory expenses and contingencies of county government." Respondent likewise takes the

position that his action in requiring the inclusion of such item is a discretionary matter vested in him under Code, 11-8-10(a), which the county court may not test by a writ of mandamus.

The crux of this controversy arises from the language of said Section 5, which provides that, "The amount of the county fund provided each year by a county court shall not be less than fifteen per cent of the total which the county is legally authorized to levy for current purposes * * *". The same section also provides for a lesser sum where it is determined, prior to the laying of a county's levies, that such lesser amount "will be sufficient to meet the reasonably anticipated general needs of the county." A lesser sum is likewise permissive where a county court "finds that expenditures mandatory under the provisions of law aggregate in excess of eighty-five per cent of the total amount which the county court is authorized by law to levy for current purposes."

Under Article VIII, Section 24, Constitution of West Virginia, county courts have superintendence and administration of the internal police and fiscal affairs of their counties, under such regulations as may be prescribed by law. Code, 7-1-5, as amended by Chapter 23, Acts Legislature of West Virginia, Regular Session, 1937, mirroring the powers so vested in county courts under constitutional authority, imposes upon such tribunals the supervision and general management of the fiscal affairs and business of the county. To the framers of the Constitution the provisions therefor must have had peculiar and singular significance. They were concerned with an assurance of local self-government. In county courts they must have seen a tribunal which embodied the means by which democratic processes, through representative government, could be accomplished. Performance of the duties, contemplated by the Constitution and imposed by legislative enactment, necessarily involves an exercise of judgment and a discernment consonant with the needs and the will of the electorate residing within the boundaries of a county. Likewise, performance of duties is

frequently, perhaps generally, circumscribed by a county's financial ability.

This Court, on many occasions, has given its approval to legislative supervision of the fiscal affairs of county governments. *Boone* v. *Boone,* 123 W. Va. 696, 17 S. E. (2d) 790; *State Road Commission* v. *County Court,* 112 W. Va. 98, 163 S. E. 815; *Kenny* v. *County Court of Webster County,* 124 W. Va. 519, 21 S. E. (2d) 385, 388, and cases cited therein. Section 5 of the Public Welfare Law, requiring county courts to allocate not less than fifteen per cent of their total levies for general relief purposes is illustrative of such legislative regulation, and the present inquiry is the extent thereof intended by the legislature.

In the opinion in *Kenny* v. *County Court, supra,* Judge Fox traced the relation of county courts toward the poor from the time when West Virginia became a sovereign state and pertinently observed therein that under the Public Welfare Law the obligation of caring for the poor is one for both the respective counties and the State. The opinion said, in part, that "to the extent that counties could not meet the reasonable costs thereof [general relief], the responsibility of the state was recognized." Section 5 unequivocally directs the minimum amount which county courts may provide for general relief purposes when such amount is available and requisite for indigents within a given county. Respondent insists that it is likewise mandatory to provide a sum greater than such minimum, when needed and where county funds are available.

We have heretofore discussed the reason for vesting county courts with a discretion, the scope of which must essentially be coextensive with a proper functioning of county government. A regulatory statute, such as Section 5 of the Public Welfare Law, which selects one specific function of such government and directs the amount which county courts must expend upon that one function, narrows the discretionary powers of such courts; and where the controversy is whether the county court or the county public assistance council (which under the Public

Welfare Law is empowered to grant or refuse relief) shall have the right to spend funds not needed for mandatory items of government, we must regard as pertinent the fact that the former is a tribunal whose status emanates from the Constitution, while the latter is a creature of legislative will, permissive but not obligatory under the basic law of this jurisdiction. If the tax commissioner, on behalf of the county councils, may demand that county courts restrict their discretionary spending so that the requirements of such councils may be fully satisfied by such county tribunals, where is such restriction to end? May not their requirements become so large that all discretion of the constitutional body shall become nugatory? May not some council, overly zealous for county indigents, challenge even the items which county courts may deem requisite—but within its judgment and hence discretionary—for a proper operation of county government? We may not say that all needs within a county are to be curtailed except that of caring for the poor, yet such might be the effect if the position of respondent is sustained. It is inconceivable that such was the legislative will. The language of the act does not so state. In fact, Section 3 (a), is indicative of the contrary when it states: "If a county court has complied with the *maximum* levy requirements of section five of article ten * * *." (Italics supplied). Moreover, had there been a mandatory legislative restriction of a specified amount, argument could have been advanced that such restriction precluded the expenditure of any sum in excess thereof, the effect of which would have been a denial of the use of discretion by county courts where excess funds might be used for relief purposes. The County Court of Mercer County has provided $5,000.00 for contingencies. The record shows that in each of the past two fiscal years, a sum greater than that allocated for the current fiscal year was spent by The County Court of Mercer County. Upon this showing we cannot say that the amount allocated is excessive. Likewise, the items for expense of the Memorial Building and the 4-H Project are appropriations made permissive under statutory authority.

We conclude, therefore, that the appropriation for tubercular patients was not a mandatory one to be provided by the county court, and that being the sole basis for the Tax Commissioner's refusal to approve unconditionally the levy estimate, it is our opinion that the county court is entitled to the relief which it seeks.

In so holding, we have not overlooked Code, 26-6-2, which provides in part that: "The reasonable expenses of poor persons admitted to state tuberculosis sanitariums at the request of the governing authority of any county or municipal corporation shall be paid by such county or municipal corporation." We simply say that, though the County Court of Mercer County is the governing authority of the county, it has incurred no liability under said Section 2 for the transportation and support of the tubercular patients involved in this proceeding, for the reason that they were transported and admitted, according to the allegations of the petition, at the direction of the County Public Assistance Council and other agencies of the State Department of Public Assistance, and not at the county court's instance or request.

The peremptory writ requiring the Tax Commissioner to approve the levy estimate unconditionally is, therefore, awarded.

*Writ awarded.*