WILLIAM A. MEADOR, PROBATION OFFICER, *etc.*

*v.*

THE COUNTY COURT OF MCDOWELL COUNTY, WEST VIRGINIA, *etc.*

(No. 10715)

Submitted April 27, 1955.     Decided June 7, 1955.

GIVEN, JUDGE, dissenting.

*W. H. Ballard, II,* for relator.

*Samuel A. Christie, Stewart A. Calhoun,* Assistant Prosecuting Attorney, for McDowell County Court.

RILEY, JUDGE:

Invoking the original jurisdiction of this Court, the petitioner, William A. Meador, Probation Officer of Mc-Dowell County, West Virginia, filed on December 7, 1954, his petition directed to the County Court of McDowell County, West Virginia, a corporation, praying that a writ of mandamus be issued compelling the respondent county court to pay to the petitioner salary in the amount of two hundred twenty-five dollars a month for each month since July, 1954, and also to pay petitioner three hundred dollars to defray field expenses incurred by petitioner as such probation officer since July 1, 1954.

The case was submitted to this Court upon petitioner's original petition, respondent's answer to the original petition, petitioner's demurrer to the respondent's

answer, petitioner's amended and supplemental petition, respondent's answer to the amended and supplemental petition, petitioner's demurrer to respondent's answer to the amended and supplemental petition, petitioner's general replication to respondent's answer to petitioner's amended and supplemental petition, and voluminous depositions taken on behalf of both petitioner and respondent, bearing in the main upon the fiscal conditions of McDowell County.

From the original and amended and supplemental petitions it appears that on October 16, 1952, petitioner, William A. Meador, was appointed Probation Officer of McDowell County, effective the same day, by the Honorable Richard R. Parsons, Judge of the Criminal Court of McDowell County.

The foregoing appointment was made pursuant to Chapter 62, Code, 1931, as amended by Chapter 27, Acts of the Legislature, Regular Session, 1939, by adding thereto a new article, Article 12, composed of twenty-two sections, relating to probation and parole, and amending and reenacting Section 5 of said Article 12, by Chapter 38, Acts of the Legislature, Regular Session, 1949, relating to the appointment and fixing of salaries of court and county court probation officers and clerical assistants.

From the original, the amended and supplemental petitions, and the answers thereto it appears that at the time of the appointment of petitioner on October 16, 1952, as Probation Officer of McDowell County, the Honorable Richard R. Parsons was, and is now, the Judge of the Criminal Court of McDowell County, and as such actively exercises jurisdiction in criminal cases and has authority to place offenders on probation.

The original and the amended and supplemental petitions allege, and respondent's answers thereto deny, that prior to the appointment of the petitioner by the Judge of the Criminal Court of McDowell County on October 16, 1952, the Judge obtained the approval of the McDowell County Court of expenses to be incurred of three hundred

dollars a year and a salary of two hundred twenty-five dollars a month to be paid to the petitioner as probation officer; and that for that fiscal year the county court allotted and appropriated the sum of three thousand dollars for the salary and field expenses of the Probation Officer of McDowell County in a levy made for the fiscal year 1953-54.

The original and the amended and supplemental petitions allege that, pursuant to such appointment, an order of appointment of the petitioner as such probation officer was entered in the proper order book of the criminal court of that county; that the petitioner was at the time of his appointment on October 16, 1952, a person qualified to perform the duties as probation officer, in that petitioner is not related to the Judge of the Criminal Court of McDowell County either by consanguinity or affinity; and that after his appointment petitioner gave bond in the penalty of one thousand dollars with Fidelity and Deposit Company of Maryland, as surety thereon, which bond was approved by both the Criminal Court and the County Court of McDowell County; and the original and amended and supplemental petitions allege, and respondent's answers thereto admit, that the petitioner has continuously performed the duties of Probation Officer of McDowell County, and is performing the duties of such office, which allegations are not controverted in this record.

It is further alleged in the petitions, and nothing contrary thereto is established by this record, that petitioner's appointment as Probation Officer of McDowell County, if valid in the first instance, has never been revoked by the Judge of the Criminal Court of McDowell County, and that at a regular meeting of the County Court of McDowell County held on Wednesday, June 23, 1954, that court entered an order which recited that funds would not be available to defray the salary and expenses of a Probation Officer for McDowell County for the fiscal year beginning July 1, 1954, and ending June 30, 1955; ordered that the Judge of the Criminal Court of McDowell County

"do not appoint or continue the appointment of a probation officer for McDowell County for the Fiscal Year beginning July 1, 1954, and ending June 30, 1955"; and further ordered that the duties heretofore performed by the probation officer appointed by the Criminal Court of McDowell County be performed by the sheriff of that county, which order of the county court is set forth in verbatim in the original petition.

Thereafter in the original petition and in the amended and supplemental petitions and the answers thereto, as well as in the depositions filed with this Court, there is brought into issue the question whether "funds would not be available to defray the salary and expenses of a Probation Officer for McDowell County for the Fiscal Year beginning July 1, 1954, and ending June 30, 1955", as recited in the order of the county court entered at its regular meeting on June 23, 1954.

It is asserted in the original and in the amended and supplemental petitions, and not controverted in any of the pleadings, that there was a balance of $137,335.32 carried over for general county purposes for the fiscal year 1953-1954, to the fiscal year 1954-1955; and that such sum represents money appropriated for general purposes for the fiscal year 1953-54, which was not used and spent, and thus could be, and was, carried over for general county purposes for the fiscal year 1954-1955. Then in minute detail the original and the amended and supplemental petitions, as well as the answers thereto, contain allegations bearing on the question whether the recital contained in the order of the county court entered at its regular meeting on June 23, 1954, "that funds will not be available to pay the salary and expenses of the Probation Officer for McDowell County for the Fiscal Year beginning July 1, 1954, and ending June 30, 1955," is a true statement of the fiscal affairs of McDowell County at the time the order was entered.

From the allegations of respondent's answers to the petitioner's original and amended and supplemental petitions it appears that for the fiscal year 1952-1953, the

Judge of the Criminal Court of McDowell County did not obtain the formal approval of the respondent county court of the expenses incurred by and the salary to be paid to petitioner; and from the uncontroverted allegations of respondent's answers it appears that the commitment made by the respondent county court to the Judge of the Criminal Court of McDowell County in its order of September 6, 1949, was for the fiscal year beginning July 1, 1949, and ending June 30, 1950, only, though the county court did include in its budget estimates for the fiscal years 1950-1951, 1951-1952, 1952-1953, and 1953-1954, appropriations for the payment of the salary and field expenses of a probation officer for the Criminal Court of McDowell County.

The pertinent provisions of the statute, which in the final analysis must govern the decision of this case, are contained in Section 5, Article 12, Chapter 38, Acts of the Legislature, 1949, now Michie's Code, 62-12-5, and read, in part, as follows:

> "The judge of any court actively exercising jurisdiction in criminal cases and having authority to place offenders on probation is authorized to appoint a court or county probation officer and a clerical assistant to serve during the pleasure of the appointing judge, * * *: *Provided,* That the appointing judge shall first obtain the approval of the county court or the county courts in his judicial circuit of the expenses to be incurred and the salary or salaries to be paid the court or county probation officer and clerical assistants, which approval shall be discretionary with said county court or courts and shall be required before any appointment made hereunder becomes effective.
>
> "* * * A court or county probation officer shall receive for his services a monthly salary of not less than two hundred nor more than three hundred dollars per month; an assistant court or county probation officer shall receive for his services a monthly salary of not less than one hundred seventy-five and not more than two hundred and fifty dollars per month. A clerical

assistant shall receive for his services not to exceed two hundred dollars per month. The county court shall make provisions for payment and pay monthly the salary of the court or county probation officer, assistant court or county probation officer and clerical assistant as designated in the order of appointment.

"The county court shall provide adequate office space, equipment and supplies for the court or county probation officer, assistant court or county probation officer and clerical assistant, to be approved by the appointing judge. The county court shall reimburse a court or county probation officer and an assistant court or county probation officer for all expenses actually and necessarily incurred in line of duty in the field."

The provision of West Virginia Constitution contained in Article VIII, Section 24, vests in the county courts of this State the superintendence and administration of the internal police and fiscal affairs of their counties, under such regulations as may be prescribed by law. Other pertinent provisions of the West Virginia Constitution are Article X, Section 7, which reads: "County authorties shall never assess taxes, in any one year, the aggregate of which shall exceed ninety-five cents per one hundred dollars valuation, except for the support of free schools; payment of indebtedness existing at the time of the adoption of this Constitution; and for the payment of any indebtedness with the interest thereon, created under the succeeding section, unless such assessment, with all questions involving the increase of such aggregate, shall have been submitted to the vote of the people of the county, and have received three-fifths of all the votes cast for and against it"; and Article X, Section 8, which reads: "No county, city, school district, or municipal corporation, except in cases where such corporations have already authorized their bonds to be issued, shall hereafter be allowed to become indebted, in any manner, or for any purpose, to an amount, including existing indebtedness, in the aggregate, exceeding five per centum on the value of the taxable property therein to be ascertained by the

last assessment for State and county taxes, previous to the incurring of such indebtedness; nor without, at the same time, providing for the collection of a direct annual tax, sufficient to pay, annually, the interest on such debt, and the principal thereof, within, and not exceeding thirty-four years; *Provided,* that no debt shall be contracted under this section, unless all questions connected with the same, shall have been first submitted to a vote of the people, and have received three-fifths of all the votes cast for and against the same"; and, in particular, the Tax Limitation Amendment, contained in Article X, Section 1, which reads: "Subject to the exceptions in this section contained, taxation shall be equal and uniform throughout the State, and all property, both real and personal, shall be taxed in proportion to its value to be ascertained as directed by law. No one species of property from which a tax may be collected shall be taxed higher than any other species of property of equal value; except that the aggregate of taxes assessed in any one year upon personal property employed exclusively in agriculture, including horticulture and grazing, products of agriculture as above defined, including live stock, while owned by the producer, and money, notes, bonds, bills and accounts receivable, stocks and other similar intangible personal property shall not exceed fifty cents on each one hundred dollars of value thereon and upon all property owned, used and occupied by the owner thereof exclusively for residential purposes and upon farms occupied and cultivated by their owners or bona-fide tenants one dollar; and upon all other property situated outside of municipalities, one dollar and fifty cents; and upon all other such property situated within municipalities, two dollars; and the legislature shall further provide by general law, for increasing the maximum rates, authorized to be fixed, by the different levying bodies upon all classes of property, by submitting the question to the voters of the taxing units affected, but no increase shall be effective unless at least sixty per cent of the qualified voters shall favor such increase, and such increase shall not continue for a long-

er period than three years at any one time, and shall never exceed by more than fifty per cent the maximum rate herein provided and prescribed by law; and the revenue derived from this source shall be apportioned by the legislature among the levying units of the State in proportion to the levy laid in said units upon real and other personal property; but property used for educational, literary, scientific, religious or charitable purposes, all cemeteries, public property, the personal property, including live stock, employed exclusively in agriculture as above defined and the products of agriculture as so defined while owned by the producers may by law be exempted from taxation; household goods to the value of two hundred dollars shall be exempted from taxation. The legislature shall have authority to tax privileges, franchises, and incomes of persons and corporations and to classify and graduate the tax on all incomes according to the amount thereof and to exempt from taxation, incomes below a minimum to be fixed from time to time, and such revenues as may be derived from such tax may be appropriated as the legislature may provide. After the year nineteen hundred thirty-three, the rate of the state tax upon property shall not exceed one cent upon the hundred dollars valuation, except to pay the principal and interest of bonded indebtedness of the State now existing."

The statutes implementing Article VIII, Section 24, West Virginia Constitution, are incorporated in Michie's Code, 1949, as follows:

> *Code, 11-8-9*: "Each local levying body shall hold a session on the first Tuesday in August for the transaction of business generally and particularly for the business herein required."

> *Code, 11-8-10*: "The county court shall, at the session provided for in section nine of this article, ascertain the fiscal condition of the county, and make an itemized statement setting forth:

> "(1) The amount due and the amount that will become due and collectible from every source during the current fiscal year except from

the levy of taxes to be made for the year upon the county as a whole and upon any district of the county for which the levies are laid by the county court;

"(2)   The interest, sinking fund and amortization requirements for the current fiscal year of bonded indebtedness legally incurred upon a vote of the people, as provided by law, prior to the adoption of the tax limitation amendment, owing by the county as a whole and by any district;

"(3)   Other contractual indebtedness not bonded, legally incurred prior to the adoption of the tax limitation amendment, owing by the county as a whole and such debts owing by any district;

"(4)   All other expenditures to be paid out of the receipts for the current fiscal year, with proper allowance for delinquent taxes, exonerations and contingencies;

"(5)   The total amount necessary to be raised for each fund by the levy of taxes for the current year;

"(6)   The proposed county levy in cents on each one hundred dollars' assessed valuation of each class of property for the county and its subdivisions;

"(7)   The proposed levy in each district for district funds, if any, on each one hundred dollars' valuation of each class of property;

"(8)   The separate and aggregate amounts of the real, personal and public utility properties in each class in the county and in each subdivision thereof.

"A copy of the statement, duly certified by the clerk of the court, shall be forwarded to the tax commissioner, and the clerk shall publish the statement forthwith.   The session shall then stand adjourned until the third Tuesday in August, at which time it shall reconvene."

*Code, 11-8-10a*: "The county court shall, when it reconvenes upon the third Tuesday in August, hear and consider any objections made

orally or in writing by the prosecuting attorney, by the tax commisisoner or his representative, or by any taxpayer of the county, to the estimate and proposed levy or to any item thereof. The court shall enter of record any objections so made and the reasons and grounds therefor.

"The failure of any officer or taxpayer to offer objections shall not preclude him from pursuing any legal remedy necessary to correct any levy made by any fiscal body under this article.

"The court, after hearing objections, shall reconsider the proposed original estimate and proposed rates of levy, and if the objections are well taken, shall correct the estimate and levy. No such estimate and levy, however, shall be entered until the same shall have first been approved, in writing, by the tax commissioner. When the same shall have been approved by the tax commissioner, the clerk shall then enter the estimate and levy, together with the order of the court approving them and the written approval of the tax commissioner thereof, in the proper record book.

"The county court shall then levy as many cents per hundred dollars' assessed valuation on each class of property in the county or its subdivisions, as the case may be, as will produce the amounts, according to the last assessments, shown to be necessary by the statement in the following order:

"First, for the bonded debt and for the contractual debt not bonded, if any, of the county incurred prior to the adoption of the tax limitation amendment;

"Second, for the bonded debt and for the contractual debt not bonded, if any, of any magisterial or special taxing district for which the county court is required to lay the levy;

"Third, for general current expenses of the county.

"The rates of levy for each purpose shall not exceed the amounts fixed by section six-b unless another rate is authorized by the tax commis-

sioner in accordance with this article. When less than the maximum levies are imposed, the levies on each class of property shall be in the same proportions as the maximums authorized."

*Code, 11-8-18*: "The tax commissioner shall prepare and furnish forms and instructions for making the statement required in sections ten, twelve, and fourteen of this article. The attorney general shall prepare and furnish forms and instructions for the holding of any election authorized by this article."

*Code, 11-8-25*: "Boards or officers expending funds derived from the levying of taxes shall expend the funds only for the purposes for which they were raised."

*Code, 11-8-26*: "A local fiscal body shall not expend money or incur obligations:

"(1)   In an unauthorized manner;

"(2)   For an unauthorized purpose;

"(3)   In excess of the amount allocated to the fund in the levy order;

"(4)   In excess of the funds available for current expenses."

*Code, 11-8-27*: "Any indebtedness created, contract made, or order or draft issued in violation of sections twenty-five and/or twenty-six of this article shall be void."

An examination of the case law of this State would definitely indicate to the Bench and Bar in West Virginia that this Court has on many occasions given its approval to legislative supervision of the fiscal affairs of county governments. See generally *County Court of Mercer County* v. *Alderson,* 124 W. Va. 781, 22 S. E. 2d 539; *Boone* v. *Boone,* 123 W. Va. 696, 17 S. E. 2d 790; *State Road Commission* v. *Kanawha County Court,* 112 W. Va. 98, 163 S. E. 815; *Kenny* v. *County Court of Webster County, West Virginia,* 124 W. Va. 519, 21 S. E. 2d 385, 388.

A reexamination of the Constitution of West Virginia has convinced this Court that its provisions have fully

protected the people of the State of West Virginia from irresponsible and unbridled actions of local fiscal bodies. It takes only a casual examination of Article VIII, Section 24, West Virginia Constitution, to see how far county courts are protected in the supervision and administration of the internal police and fiscal affairs of their counties, under such provisions as may be provided by law. Perhaps it is unnecessary for this Court, as stated in *County Court of Mercer County* v. *Alderson, State Tax Commissioner, supra,* to reiterate that: "Under Article VIII, Section 24, Constitution of West Virginia, county courts have superintendence and administration of the internal police and fiscal affairs of their counties, under such regulations as may be prescribed by law. Code, 7-1-5, as amended by Chapter 23, Acts of the Legislature of West Virginia, Regular Session, 1937, mirroring the powers so vested in county courts under constitutional authority, imposes upon such tribunals the supervision and general management of the fiscal affairs and business of the county. To the framers of the Constitution the provisions therefor must have had peculiar and singular significance. They were concerned with an assurance of local self-government. In county courts they must have seen a tribunal which embodied the means by which democratic processes, through representative government, could be accomplished. Performance of the duties, contemplated by the Constitution and imposed by legislative enactment, necessarily involves an exercise of judgment and a discernment consonant with the needs and the will of the electorate residing within the boundaries of a county. Likewise, performance of duties is frequently, perhaps generally, circumscribed by a county's financial ability."

At the time the county court entered its order of June 23, 1954, setting forth the reason the county court could not approve the salary and field expenses of a probation officer during the fiscal year 1954-1955, the county court was of the opinion, based upon information then available, that it would have an overdraft of $44,609.29 for the fiscal year 1954-1955, if the income and expenses for

that fiscal year were approximately the same as they had been during the previous fiscal year 1953-1954. Prior to the meeting of the county court on June 23, 1954, the court had convened on June 9, 1954, for the purpose of fixing the allowances to the sheriff, county clerk, and circuit clerk for their deputies and assistants; and it was at the meeting of June 9, 1954, that the court estimated that it would have a deficit of $44,609.29, and the Sheriff of McDowell County was informed that his allowance for deputies would be decreased from that made for the previous fiscal year. Later at a meeting held on August 3, 1954, when the correct figures due from the sheriff were available and the assessed value of the real, personal and public utility properties in the county was determined, the court for the first time ascertained that the overdraft for the fiscal year 1954-1955, instead of amounting to $44,609.29, would amount to $61,051.79. The respondent's answers to the original and amended and supplemental petitions, as well as the depositions taken on the issues raised by the pleadings and filed in this Court, show that the deficit of $61,051.79 arose by reason of the fact that the county court made what it regarded as mandatory appropriations in the amount of the deficit, which was made up primarily by the expenses of two elections, which had to be paid for from the revenue derived in the fiscal year 1954-1955.

The court did not impose the maximum levies under the limitations contained in Sections 7 and 8 of Article X of the West Virginia Constitution, for the fiscal year 1953-1954. However, in making up the budget estimate for the fiscal year 1954-1955, the county court increased the levies for that fiscal year to the limitations contained in the two last-mentioned constitutional provisions, thus seeking to raise thereby $14,126.00 in additional taxes.

In making up the anticipated overdraft or deficit of $61,051.79 for the fiscal year 1954-1955, the court decreased what it deemed to be discretionary appropriations in the amount of $35,045.00; raised the estimated earnings of the several offices by $9,531.40; and decreased the

obligations outstanding at the end of the fiscal year 1953-1954 by the sum of $2,349.39, all of which, together with the additional taxes in the amount of $14,126.00 which would be paid during the fiscal year 1954-1955, would overcome the deficit in the amount of $61,051.79. Thus the anticipated deficit in the amount of $61,051.79 was made up of four items: (1) A decrease in what the respondent deems to be discretionary appropriations for the fiscal year 1954-1955, under the fiscal year 1953-1954 in the sum of $35,045.00; (2) an increase in taxes for the fiscal year 1954-1955 over the taxes derived from the tax levies provided for in the 1953-1954 budget, by increasing the levies to the maximum levels provided for in Sections 7 and 8 of Article X of the Constitution, in the amount of $14,126.00; (3) by decreasing the obligations of the county court outstanding at the end of the fiscal year 1953-1954 from those for the fiscal year 1954-1955, in the amount of $2,349.39; and (4) by increasing the estimated receipts or earnings for the fiscal year 1954-1955 over those of 1953-1954 by $9,531.40, which four items added together make the total of $61,051.79, being the deficit estimated by the county court.

Of the sixteen appropriations provided for in the budget made up by the county court at its meeting on August 3, 1954, eleven are deemed mandatory by the county court and five are deemed discretionary. The eleven items which the respondent deems mandatory are:

> Expenses of Justice of the Peace Courts.
> Courthouse expense.
> Furniture and fixtures.
> Janitors.
> Water, light and fuel.
> Record books.
> Rents.
> Rental of voting machines.
> Memorial Buildings.
> Inquests.
> Preliminary plans and drawings for a new
> Jail and a Courthouse annex.

The five items which the county court regards as discretionary are:

Assistants and employees, Prosecuting Attorney's Office.
Contingencies.
Deputies and employees, Sheriff's office.
Police radio maintenance.
Repairs to record books.

It is true, as stated in respondent's brief, that the appropriations provided for in the budget estimate, upon which the levies for McDowell County for the fiscal year 1954-1955 were based, were supported in this record by the witnesses who testified on behalf of the respondent. West Virginia Constitution, Article VIII, Section 24, provides that county courts: "* * * shall also, under such regulations as may be prescribed by law, have the superintendence and administration of the internal police and fiscal affairs of their counties, * * * with authority to lay and disburse the county levies." We have heretofore discussed the wide discretion which this provision of the Constitution vests in county courts of the superintendence and administration of the internal police and fiscal affairs of their counties, together with the authority to lay and disburse the county levies, subject only to the tax limitations contained in the provisions of the West Virginia Constitution heretofore set forth, and in the implementing statutes, Code, 11-8, as amended by Chapter 67, Acts of the Legislature, Second Extraordinary Session, 1933, and Chapter 132, Acts of the Legislature, Regular Session, 1939, a discretion which this Court cannot disturb by the issuance of a writ of mandamus in the absence of a clear legal right on the part of the petitioner. While mandamus is the proper remedy to compel the tribunals and officers exercising discretionary and judicial power to act, when they fail so to do in violation of their duty, it is never employed to prescribe in what manner they shall act, or to correct errors they may have made. *Miller, Sheriff,* v. *Tucker County,* 34 W. Va. 285, 12 S. E. 702; pt. 1 syl., *County Court of Taylor County* v. *Holt, Judge,* 61 W. Va. 154, 56 S. E. 205; *State ex rel. Buxton* v. *O'Brien and County Court of Mason County,* 97 W. Va. 343, 125 S. E. 154; *Wiley and Booker* v. *County*

*Court of Mercer County,* 111 W. Va. 646, 163 S. E. 441; *County Court of Mercer County* v. *Alderson, State Tax Commissioner, supra;* High on Extraordinary Legal Remedies, Sections 31 and 32.

In view of the uncontroverted evidence in this case, which exhibits to this Court that the respondent county court was confronted with a deficit for the fiscal year 1954-1955, as respondent alleges in its answers, which allegations are supported by substantial evidence, and which deficit was made up by the county court in the exercise of the wide supervisory powers over the fiscal affairs of the county vested in it by West Virginia Constitution, Article VIII, Section 24, this Court is prompted to hold that the petitioner has not, by the uncontroverted allegations of his petition and his amended and supplemental petition and the evidence offered in support thereof, shown a clear legal right for the remedy which he now seeks from this Court. A writ of mandamus in this jurisdiction will not be awarded in the absence of such right. 12 M. J., Mandamus, Section 5, *State ex rel. Koontz* v. *Board of Park Commissioners,* 131 W. Va. 417, 47 S. E. 2d 689; *State ex rel. Conley* v. *Pennybacker,* 131 W. Va. 442, 48 S. E. 2d 9; *State ex rel. State Lodge* v. *Charleston,* 133 W. Va. 420, 56 S. E. 2d 763; *State ex rel, Burford* v. *McKee,* 135 W. Va. 18, 62 S. E. 2d 281, 23 A. L. R. 2d 798; *State ex rel. Payne* v. *Board of Education,* 135 W. Va. 349, 63 S. E. 2d 579; *State ex rel. Daily Gazette Co.* v. *Kanawha County Court,* 137 W. Va. 127, 70 S. E. 2d 260; *State ex rel. Trent* v. *Amick,* 137 W. Va. 842, 74 S. E. 2d 587; *Hockman, Sheriff* v. *Tucker County Court,* 138 W. Va. 132, 75 S. E. 2d 82; and *State ex rel. Emery, Jr.* v. *Rodgers, Judge,* 138 W. Va. 562, 76 S. E. 2d 690.

Of itself determinative of the decision of this case is the fact that the county court on August 3, 1954, that being the first Tuesday in August, 1954, met in regular session, as it was required to do under Code, 11-8-9, for the purpose of making up its budget and levy estimate for the fiscal year 1954-1955, without making any appropriation in the budget estimate for the payment of petit-

ioner's salary and field expenses for that fiscal year, and not until two months thereafter, that is, in October, 1954, did the petitioner and the Judge of the Criminal Court of McDowell County appear at a regular meeting of the county court and inform the court that petitioner had continued to perform the duties of probation officer, notwithstanding the order of the county court of June 23, 1954, and then inquired if there was some way petitioner's salary and expenses could be paid out of fines and fees collected by him. Upon being informed by the respondent county court that no such arrangement could be made, and that the county court could not otherwise make any payment to the petitioner, as no appropriation for that purpose had been included in the budget estimate for the fiscal year 1954-1955, the Judge of the Criminal Court said he would look into the methods used in Kanawha County and furnish respondent with such information as he could obtain; but this record discloses that respondent never thereafter heard anything further about the matter from either the petitioner or the Judge of the Criminal Court, until this proceeding was instituted on December 7, 1954.

This record discloses that the respondent in making up its estimate contained in its budget for the fiscal year 1954-1955, and providing for levies to pay the amount appropriated by the budget, had, in the exercise of the discretion residing in the county court by reason of West Virginia Constitution, Article VIII, Section 24, and Code, 11-8, as amended, exhausted all of the revenues then available or anticipated by the respondent to be available during the ensuing fiscal year.

The applicable statutory provisions governing county courts and other local fiscal bodies in the expenditure of funds are contained in Code, 11-8, as amended by Section 19, Article 8, Chapter 38, Acts of the Legislature, Regular Session, 1933, and as further amended by Section 25, Article 8, Chapter 67, Acts of the Legislature, Second Extraordinary Session, 1933, which Section 25 provides: "Boards or officers expending funds derived from the

levying of taxes shall expend the funds only for the purposes for which they were raised." Code, 11-8, as amended by Section 20, Article 8, Chapter 38, Acts of the Legislature, Regular Session, 1933, and as further amended by Section 26, Article 8, Chapter 67, Acts of the Legislature, Second Extraordinary Session, 1933, reads:

"A local fiscal body shall not expend money or incur obligations:

"(1)  In an unauthorized manner;

"(2)  For an unauthorized purpose;

"(3)  In excess of the amount allocated to the fund in the levy order;

"(4)  In excess of the funds available for current expenses."

Code, 11-8, as amended by Chapter 67, Acts of the Legislature, Second Extraordinary Session, 1933, and as amended by Section 10-a, Article 8, Chapter 26, Acts of the Legislature, Regular Session, 1937, by adding thereto a new section designated as Section 10-a, and as the last-mentioned section was amended by Section 10-a, Article 8, Chapter 132, Acts of the Legislature, Regular Session, 1939, provides that the county court shall, when it reconvenes on the third Tuesday in August "hear and consider any objections made orally or in writing by the prosecuting attorney, by the tax commissioner or his representative, or by any taxpayer of the county, to the estimate and proposed levy or to any item thereof." True, this section provides that "The failure of any officer or taxpayer to offer objections shall not preclude him from pursuing any legal remedy necessary to correct any levy made by any fiscal body under this article [namely, Article 8, Chapter 132, Acts of the Legislature, Regular Session, 1939]." Not only did the petitioner not file any objections to the levy, but petitioner's first formal objections to the levy were set forth in the petition in this proceeding, which having been instituted by the filing of the petition on December 7, 1954, was after the time, namely the third Tuesday in August, 1954, designated in Section

10-a, for the hearing by the county court of objections to proposed levies, and, as disclosed by this record, after the time that the proposed levies were approved by the state tax commissioner, and the estimate and levy, together with the order of the court approving them, and the written approval of the state tax commissioner, recorded in the proper record book.

At the time this proceeding was instituted the County Court of McDowell County in the expenditure of moneys for the fiscal year 1954-1955 had already embarked with the approval of the state tax commissioner on the expenditure of moneys available at the time the order was entered, and to be available during the ensuing fiscal year. Surely, a belated proceeding in mandamus, such as is now under consideration, should not disturb the estimate made by the county court, the budget adopted thereunder, and the tax levies made in accordance therewith.

No appropriation having been embraced in the budget of the county court for the fiscal year 1954-1955, which was approved by the state tax commissioner, this Court should not grant the prayers contained in petitioner's original and amended and supplemental petitions, which do not contain a prayer that the county court reconvene and correct its estimate and budget for the fiscal year 1954-1955, but simply prays that this Court should annul and set aside the order of the county court of June 23, 1954, and that the respondent county court be commanded to pay to the petitioner a salary of two hundred twenty-five dollars a month since July 1, 1954, and twenty-five dollars a month for field expenses incurred as Probation Officer of McDowell County, from July 1, 1954, to December 1, 1954; "and that said respondent be ordered to continue to pay to your" petitioner such "salary for the remainder of the said fiscal year 1954-1955 and for so long as he remains the duly appointed and acting Probation Officer of said county", and for general relief.

Axiomatic in the statutory law governing local fiscal bodies in the making of their estimate and budget for an

ensuing fiscal year and levying taxes in accordance there-with is the norm that a local fiscal body cannot expend money where in the first instance it has made no appropriation therefor.

In point 4 of *Baldwin* v. *City of Martinsburg*, 133 W. Va. 513, 56 S. E. 2d 886, 887, this Court held that "Under the provisions of Code, 11-8, as amended, there can be no legal expenditure of public funds by a municipality where such funds have not been allocated for such expenditure in the estimate required to be made up and approved thereunder." In the body of the opinion in the West Virginia Reports at page 537, and in 56 S. E. 2d at page 899, this Court, speaking through Judge Fox, said: "So far as we know, there is no authority under our statute, or otherwise, for the expenditure by a municipality of any sum of money unless such expenditure has been authorized by its inclusion in the budget estimate which is required to precede the laying of taxes on real and personal property. Such a thing as the imposition of a tax by a municipality after the levy period in August, and the expenditure of the receipts of such a tax without reference to the budget estimate, is, as we understand, unknown to our law." See also *State ex rel. Boone National Bank of Madison* v. *Manns*, 126 W. Va. 643, 29 S. E. 2d 621.

Though this Court has held that where funds derived from taxes levied for a particular purpose have been diverted through error, mandamus will lie, on a proper showing, to restore the funds for the purposes for which levied and to correct the error. *State ex rel. Cook* v. *Lawson, Auditor*, 110 W. Va. 258, 157 S. E. 589, the rule that mandamus will not'be employed to require a local levying body to pay a debt for which no appropriation has been made stands undisturbed in this jurisdiction.

Likewise, and equally controlling, in the decision of this case, which prompts this Court to refuse the writ prayed for in the petitions, is the mandatorily prohibitive legislative fiat that a local fiscal body such as the county court cannot make a contract, the performance of which

would invade the revenue for a subsequent year. In this regard Code, 11-8, as last amended by Section 26, Chapter 67, Acts of the Legislature, 1933, Second Extraordinary Session, provides: "A local fiscal body shall not expend money or incur obligations: * * * (4) In excess of the funds available for current expenses."

In *Davis* v. *Board of Education,* 38 W. Va. 382, 385, 18 S. E. 588, 589, this Court, speaking through Judge Brannon, said: "The plain and commendable purpose of the provision [Chapter 45, Section 45, of the Code at the time the case was decided, now Code, 11-8-26, as amended,] is to make the available funds of each year pay the demands of that year, and to protect the taxpayers from the indebtedness beyond what each year's means will pay." In *State ex rel. Mick* v. *County Court of Lewis County,* 110 W. Va. 533, 158 S. E. 790, in which case Lorenzo Mick and others, all of whom were deputy assessors of Lewis County, appointed by the assessor with the consent of the county court of that county, entered of record, all of whose annual salaries of one thousand dollars immediately prior to the commencement of their terms of office were concurred in by the assessor and the county court, which salaries were payable in monthly installments of two hundred dollars over the first five months of each year of their tenure in office, and the county court having attempted, over the protest of the assessor, to reduce the several salaries for a year subsequent to the year of their appointment to seven hundred fifty dollars, this Court refused to award the mandamus prayed for by the deputy assessors, directing the county court to pay to them their salaries of two hundred dollars a month for the first five months of the year, in which the salaries had been reduced. The Court stated that: "Consequently, the petitioners have in their favor only such inferences as argument suggest. Opposed to these inferences is the unqualified statutory inhibition against the county court incurring 'any obligation or indebtedness which such fiscal body is not expressly authorized by law to expend or incur', and the general legislative policy limiting all obliga-

tions of the county court to the levy for the current fiscal year. See Code, 1923, c. 28-A, § 12", which provided *inter alia*, as does Code, 11-8-26, as amended, that the county court and other designated local fiscal bodies shall not "issue or cause to be issued any such certificate, order or other evidence of indebtedness," which cannot be paid out of the levy for the current fiscal year or out of the fund against which it is issued.

In *Ireland* v. *Board of Education of Kanawha County*, 115 W. Va. 614, 177 S. E. 452, in which the plaintiff Ireland in an action at law sought to recover from the Board of Education of Kanawha County for professional services rendered under a contract which Ireland had with the board of education in advance of the fiscal year for which he had been employed, which provided for the expenditure of money within that period, this Court in the syllabus held: "An undertaking by a fiscal body in advance of a fiscal year for the expenditure of money within that period, even though an equivalent amount of money be then in hand as a surplus or balance from the current year, is in reality an invasion of the funds of such subsequent year, and is in violation of Code 1931, 11-8-13", which Section 13 then provided, in effect, as does Code, 11-8-26, "that a fiscal body (county court, board of education, council of a municipality) shall not 'make any contract, express or implied the performance of which, in whole or in part, would involve the expenditure of money in excess of funds legally at the disposal of such fiscal body, nor issue or authorize to be issued any certificate, order or other evidence of indebtedness which cannot be paid out of the levy for the current fiscal year or out of the fund against which it is issued.' " This record discloses that on September 6, 1949, the county court entered an order, "IN THE MATTER OF THE SALARY AND EXPENSES FOR THE OFFICE OF COUNTY PROBATION OFFICER FOR McDOWELL COUNTY FOR THE FISCAL YEAR FROM JULY 1, 1949, TO JUNE 30, 1950", which order recites that the Judge of the Criminal Court concurred in the fixing of the

salary and expenses of the probation officer and the appropriation by the County Court of McDowell County to pay the same; that thereafter Bernard H. Woodyard, who was thus appointed by the concurrence of the County Court of McDowell County and the Judge of the Criminal Court of that county, to serve as probation officer from August 1, 1949, to January 1, 1951, without any further approval being had or obtained from the respondent as to the amount of salary or field expenses; that by order entered by the Criminal Court of McDowell County on January 2, 1951, Walter A. Farmer was appointed probation officer of the Criminal Court of McDowell County, effective on January 1, 1951, which appointment was made without the Judge of the Criminal Court of McDowell County having first obtained the approval of the County Court of McDowell County, as provided by Section 5, Article 12, Chapter 38, Acts of the Legislature, 1949, now contained in Michie's 1949 Code, Anno., 62-12-5, the statute which authorizes the judges of any courts in this State, actively exercising jurisdiction in criminal cases and having authority to place offenders on probation, to appoint a county probation officer and a clerical assistant "to serve during the pleasure of the appointing judge, * * *: *Provided*, That the appointing judge shall first obtain the approval of the county court * * * of the expenses to be incurred and the salary or salaries to be paid the court or county probation officer and clerical assistants, which approval shall be discretionary with said county court or courts and shall be required before any appointment made hereunder becomes effective." Nevertheless, the county court included in the estimate and budget an appropriation sufficient to pay the salary and field expenses of the said Farmer from January 1, 1951, to October 16, 1952; that on October 16, 1952, the Criminal Court of McDowell County, by order properly entered, appointed the petitioner as county probation officer, without any concurrence of the county court, although the county court provided in its budget for the payment of petitioner's salary and expenses from October 16, 1952, to June

30, 1954; and, the record discloses, that during the close of the fiscal year 1953-1954 the county court entered the order of June 23, 1954, providing that the duties theretofore performed by Meador shall be performed by the Sheriff of McDowell County thereafter. The county court at its meeting on August 3, 1954, as provided by Code, 11-8-9, prepared its estimate and budget for the fiscal year 1954-1955, without making any provision for the payment of a probation officer.

Thus, under the statutory rule, considered in the above-cited cases, a local fiscal body may not provide for the expenditure of moneys "In excess of the funds available for current expenses", as provided in Code, 11-8-26 (4), and for the reasons heretofore stated we are of opinion that the appropriation for the payment of a court-appointed probation officer for the fiscal year 1949-1950, contained in the budget prepared by the county court for that fiscal year, had with the concurrence of the Judge of the Criminal Court, and the inclusion of the appropriation by the county court on the occasion of each fiscal budget thereafter, until the preparation of the budget for the fiscal year 1954-1955, did not serve to obligate the county court to make a like appropriation for the fiscal year 1954-1955. If this Court should so hold, it would render nugatory the salutary provisions of West Virginia Constitution, Article VIII, Section 24, and Code, 11-8, as amended, particularly Sections 25 and 26 thereof, which were designed to preserve local self-government and protect the financial integrity of local fiscal bodies in the State in the sound financial management of their respective units.

Thus we have been prompted to decide this case, and refuse the writ of mandamus prayed for primarily on the basis of the constitutional and statutory provisions governing county courts and other local fiscal bodies.

Notwithstanding, however, the clearly mandatory and prohibitive provisions of West Virginia Constitution, Article VIII, Section 24, delegating to county courts the power to administer the internal police and fiscal affairs

of the county, West Virginia Constitution, Article X, Sections 1, 7 and 8, regulating county courts and other fiscal bodies, in the matter of taxation, assessment of taxes, incurring indebtedness, and laying levies, and the implementing statutes contained in Code, 11-8, as amended, the provisions of which have prompted this Court, as heretofore stated, to arrive at the decision in this case and to deny the writ prayed for, counsel for petitioner, relying upon Chapter 62, Code, 1931, as amended by adding Article 12, and reenacted by Acts of the Legislature, Regular Session, 1939, Chapter 27, Article 12, Section 5, and as amended and reenacted by Section 5, Article 12, Chapter 38, Acts of the Legislature, Regular Session, 1949, providing for the appointment of a probation officer by the judge of a court exercising jurisdiction in criminal cases, and having authority to place offenders on probation, asserts that once a county court has approved the amount of salary and expenses of a probation officer, as McDowell County did for the fiscal year 1949-50, it is not necessary for the appointing judge to reobtain such approval at the beginning of each fiscal year, or each time a probation officer is appointed to succeed one who has resigned or died. The gravamen of the position of counsel for petitioner in this respect is that Section 5 provides that such judge is authorized to appoint a probation officer, and a clerical assistant, to serve at the pleasure of the appointing judge; and further that the clause following the word "Provided" in the statute that the appointing judge shall "first" obtain the approval of the county court or county courts of his judicial circuit of the expenses to be incurred and the salary or salaries to be paid, which approval shall be required before "any" appointment made under Section 5 has become effective. With this position, in all deference to counsel for petitioner, we do not agree. In the first place the word "first" contained in the statute was clearly used to connote "before", the Legislature evidently intending that before the appointing judge may make the appointment effective, he must first "obtain the approval of the county court or the county courts in his judicial circuit of the expenses to be

incurred, and the salary or salaries to be paid the court or county probation officer and clerical assistants"; but the statute expressly provides that such approval of the county court shall be within the discretion of the county court or county courts, "and shall be required before any appointment made hereunder becomes effective." So the last-quoted provision of the statute emphasizes that the Legislature intended that before an appointment of a probation officer can be made, the approval of the expenses and salaries of the probation officer sought to be appointed shall be obtained from the county court or county courts in the appointing judge's judicial circuit, and the last-quoted provision of the statute emphasizes the legislative intendment that such approval shall be required to make any appointment effective.

No provision of Section 5, Article 12, Chapter 38, Acts of the Legislature, 1949, Regular Session, requires that the provisions of Code, 11-8, as amended, which govern the local fiscal bodies in the management and conduct of their fiscal affairs, shall be abrogated so far as probation officers are concerned. True, Section 5 of the pertinent statute provides that: "* * * A court or county probation officer shall receive for his services a monthly salary of not less than two hundred nor more than three hundred dollars per month; an assistant court or county probation officer shall receive for his services a monthly salary of not less than one hundred seventy-five and not more than two hundred and fifty dollars per month. A clerical assistant shall receive for his services not to exceed two hundred dollars per month." There is, however, nothing in the statute to indicate that such financial provision shall not be made in conformity with the constitutional provisions governing county courts and other local fiscal bodies in the management of their fiscal affairs.

Counsel for petitioner also asserts in his brief that lack of funds in the general county fund cannot be used as an excuse for the nonpayment or the refusal to pay the salary of a probation officer, and in support of this position cites point 3 of the syllabus of *State ex rel. Sprague*

124

v. *County Court of Greenbrier County,* 93 W. Va. 481, 117 S. E. 135, in which the petitioner Sprague sought in this Court a peremptory writ of mandamus against the County Court of Greenbrier County to have the county court draw and deliver to him orders for the payment of his salary for the months of January and February, 1923. In point 3 of the Sprague case this Court held: "That the general county fund may be exhausted before the end of the fiscal year by the payment of the fixed and definite charges thereon, is no excuse for the non-payment of the duly approved accounts of a county prohibition officer, lawfully employed, so long as there remains an unexpended balance in that fund." In the *Sprague* case the petitioner was the regularly appointed prohibition officer, which appointment had been approved by the circuit court, and the appointment was made under then Code, Chapter 32-A, Section 21, which expressly provided that the compensation of a prohibition officer, so employed shall be " 'paid out of the county fund in the same manner as other county expenses are paid'." In the opinion 93 W. Va., at page 488, in this case Judge Meredith stated: "Had the county court here attempted to make a contract for the hire of a prohibition officer in excess of funds available, the statute referred to [Code, Chapter 28-A, Section 12, now incorporated in Code, 11-8, as amended] may have had some application. It has no reference to an appointment made by the prosecuting attorney or circuit court." Under the statute invoked in the *Sprague* case, to use the language contained in the opinion, "Of course, the county court had no discretion as to the amount of the compensation to which petitioner was entitled, nor do they claim that right. That is a matter for the prosecuting attorney and circuit court to decide."

In the case of *State ex rel. Moran* v. *Amos,* 104 W. Va. 538, 544, 140 S. E. 544, 546, this Court, citing the *Sprague* case, said "That the pay for the future services of these petitioners may fail because of lack of money appropriated, is no reason why they should not be paid for the

services which they have already rendered, and for the payment of which there *is* sufficient sums in the treasury." But in the case at bar the petitioner was paid for the fiscal year 1953-1954, and in this proceeding he is seeking payment for services for the ensuing fiscal year.

The cases of *State ex rel. Peterkin* v. *City Council of the City of Parkersburg*, 95 W. Va. 502, 121 S. E. 489, and *State ex rel. Smith* v. *Hall, Sheriff*, 94 W. Va. 400, 119 S. E. 166, also cited by counsel for the petitioner, are not in point with the case at bar. The *Smith* case was a proceeding in mandamus, in which a teacher, who had been appointed by a board of education in the place of a former teacher who had been discharged, had completed the school term, but the county financial secretary had refused to countersign the salary orders issued by the board to such successor teacher, who then obtained judgment against the board for the amounts of her salary, and sought a writ of mandamus to require the sheriff to pay the judgments out of the teachers' fund of the board. This Court in point 3 of the syllabus held that: "* * * The judgments are valid claims against the teachers' fund, so long as they remain unreversed and unsatisfied; and that their payment by the sheriff would exhaust the fund in his hands, and not leave sufficient moneys in said fund to pay the former teacher's claims, if adjudged valid, is no defense to the mandamus proceedings." In that case the Court simply refused the writ of mandamus prayed for on the ground that the sheriff could not legally pay a judgment against the board of education, out of funds of the board, except upon the order of the board, under Barnes' Code, 1923, Chapter 45, Section 189. In the *Peterkin* case the Court simply held that where the council of a municipality was under the mandatory duty to call an election, when a proper petition for the purpose had been submitted to the city clerk, it could not refuse on the ground that the city was without available funds in the current fiscal year to meet the necessary expenses of holding an election.

Counsel for petitioner has cited no case, and none has

come to our attention, which holds that where a public officer has the power to appoint an employee or officer, as does the criminal court under a statute such as Section 5, Article 12, Chapter 38, Acts of the Legislature, Regular Session, 1949, which requires the appointing officer first to obtain the approval of the county court, that the county court has the duty for the fiscal year, in which approval has not been sought and obtained, to appropriate money to pay the salary and expenses of such appointed officer.

If the Legislature did so intend, it could have so provided, as it did by the enactment of Section 5-a, Article 12, Chapter 61, Acts of the Legislature, Regular Session, 1953, in providing that "The judge of the circuit courts of the fourteenth judicial circuit and of the circuit court of Wayne county in the twenty-fourth judicial circuit each is authorized to appoint a probation officer to serve during the pleasure of the appointing judge, without first obtaining approval of the county courts of the counties of said judicial circuit and of Wayne county, respectively, * * *."

This Court realizes that it is not good governmental policy to have an enforcement officer of a county, such as the Sheriff of McDowell County, enforce the laws of that county, and by the same token act as probation officer for the county. It is indeed regrettable that the fiscal affairs of McDowell County are such that they will not maintain a probation officer separate from the enforcement officer of McDowell County. It is, however, not the duty of this Court to break down the constitutional and statutory provisions of this State, which vest in the county courts, in the exercise of sound discretion, the power, right and duty to administer the fiscal affairs of their counties free from judicial control by the courts of this State.

For the foregoing reasons the writ of mandamus prayed for is denied.

*Writ denied.*

GIVEN, JUDGE, dissenting:

I am unable to find in the pertinent statute, Code, 62-12-5, intent on the part of the Legislature to place in the county courts of the respective counties the power to determine when circuit courts and other courts "actively exercising jurisdiction in criminal cases", may need, or appoint, probation officers. The statute, in my view, unqualifiedly authorizes the courts exercising criminal jurisdiction to appoint such officers and, mandatorily, requires the county courts to make provision for payment of salaries and expenses of such officers, within the minimum and maximum limits expressly fixed by the statute.

The wording of the statute is clear and unequivocal, expressly providing that a court exercising criminal jurisdiction "is authorized to appoint a court or county probation officer * * * to serve during the pleasure of the appointing judge". The statute does not limit the power so granted, or authorize the county court to approve, veto, control or nullify such an appointment. The statute does provide that the appointing judge shall obtain approval of the county court as to "the expenses to be incurred and the salary" to be paid. But the county court is expressly required to provide for such payment within the minimum and maximum limits expressly fixed by the statute. The evident purpose of the provision is to inform the county court of the proposed appointment and of facts necessary to be considered by the county court in the making of the estimates, levy and appropriations for the ensuing fiscal year. Had the purpose of the provision been to place control of such an appointment completely within the discretion of the county courts, would not the Legislature have said so in so many words, and would it have fixed minimum and maximum limits as to the amount of salaries to be paid such officers, or would it have provided that the county courts "shall provide adequate office space, equipment and supplies" for such probation officers? Does it not seem strange that the Legislature would vest control in the county courts over the appointment or continuance of probation officers, instead of in the courts having jurisdiction of matters relating to

probation? A careful reading of the statute convinces me that the Legislature intended and designed the statute so as to vest the sole power of appointment in the courts having jurisdiction over convicted criminals. The county courts would probably be the last to desire control of probationers, or the duty or responsibility of selecting probation officers.

There appears no question as to the right or power of the Legislature to authorize a court having and exercising criminal jurisdiction to appoint a probation officer. See *Locke* v. *County Court of Raleigh County*, 111 W. Va. 156, 161 S. E. 6; *State ex rel. Hall* v. *County Court of Monongalia County*, 82 W. Va. 564, 96 S. E. 966. The Legislature, of course, could withdraw the power and terminate the office at its discretion. Neither can there be any doubt as to the power of the Legislature to impose on county courts mandatory duties, not judicial in nature. "Expenditures by a county court, from the general county fund, necessary to administer constitutionally required functions of county government, are mandatory, and take precedence over those required for general relief." Point 2, Syllabus, *Kenny* v. *County Court of Webster County*, 124 W. Va. 519, 21 S. E. 2d 385. See *State ex rel. Richardson* v. *County Court of Kanawha County*, 138 W. Va. 885, 78 S. E. 2d 569; *State ex rel. Ward* v. *County Court of Raleigh County*, 138 W. Va. 551, 76 S. E. 2d 579; *State Road Commission* v. *County Court of Kanawha County*, 112 W. Va. 98, 163 S. E. 815; *State ex rel. Sprague* v. *County Court of Greenbrier County*, 93 W. Va. 481, 117 S. E. 135; *Dillon* v. *County Court of Braxton County*, 60 W. Va. 339, 55 S. E. 382.

The majority bases its holding principally upon the ground that a county court having constitutional powers to administer the fiscal affairs of its county must be accorded discretion in such matters. There can be no doubt that a county court has very wide discretion in many matters falling within its responsibilities, but "this Court has on many occasions given its approval to legislative supervision of the fiscal affairs of county governments",

as the majority admits in its opinion, citing a number of cases so holding. Thus, no constitutional question is here actually involved. The controlling question is simply whether the pertinent statute, Code, 62-12-5, imposes a mandatory duty on the county court.

Neither is there any question as to the making of any contract which would "invade the revenue for a subsequent year". If it was the mandatory duty of the county court to include within the levy a sum for the salary of petitioner, it should not be permitted to escape that mandate of the Legislature. Neither have the several constitutional and statutory provisions limiting the power of the county courts as to matters relating to the levy or expenditures of moneys any pertinency to the controlling question involved here. The county court must, of course, operate within the limitations of those provisions. The simple answer is that those expenditures which are made mandatory must be paid first, and, if necessary, those expenditures not made mandatory reduced or eliminated, as pointed out in *Kenny* v. *County Court of Webster County, supra*.

Even though the pertinent statute be construed so as to require a court exercising criminal jurisdiction to confer with the county court before the appointment of a probation officer concerning matters relating to the amount of salary and expenses, the writ prayed for should issue in this case. The Criminal Court Judge of McDowell County did, as is admitted, confer with the county court of that county before the original appointment, and the county court actually paid the salary and expenses of petitioner from the date of his appointment, October 16, 1952, until July 1, 1954. Yet in the face of the statute, which expressly provides that the probation officer appointed may "serve during the pleasure of the appointing judge", the majority permits the county court to terminate the office of petitioner and to deny the Criminal Court of McDowell County the right to the services of a probation officer. Such a holding not only does violence to the language of the statute, it affects adversely the

probation system of every court exercising criminal jurisdiction in West Virginia. Will such courts in the future be successful in persuading competent probation officers to accept employment, knowing when employed that their services may be terminated at the end of the fiscal year? The difficulty heretofore had in obtaining trained and experienced probation officers is common knowledge. In the future, will the probation officers serving in the courts exercising criminal jurisdiction feel or be under a bounded duty to the county courts, as well as to the courts having duties and responsibilties relating to probation of persons convicted of crimes? The effect of the majority holding, as I view it, is simply to empower the county courts to require all supervision of probationers to be done by the sheriffs of the respective counties, the very practice the Legislature attempted to avoid, and the duties of which the sheriffs of the several counties would, no doubt, willingly be relieved.

Being of the views indicated, I respectively dissent. I would issue the writ.