720 S.E.2d 587

**COUNTY COMMISSION OF GREENBRIER COUNTY,**
West Virginia, Petitioner

v.

**Honorable John L. CUMMINGS and James W. Childers, Sheriff of Greenbrier County, West Virginia, Respondents.**

No. 11–1035.

Supreme Court of Appeals of
West Virginia.

Submitted Oct. 18, 2011.

Decided Nov. 10, 2011.

Marvin W. Masters, April D. Ferrebee, The Masters Law Firm, LC, Charleston, WV, for Petitioner.

John R. Teare, Jr., Spilman, Thomas & Battle, PLLC, Charleston, WV, for Respondents.

McHUGH, Justice:

The County Commission of Greenbrier County ("Commission") seeks a writ of prohibition in connection with the issuance of a writ of mandamus against it by the Honorable John L. Cummings on May 20, 2011. After finding that the Commission acted arbitrarily and capriciously by reducing the budget of Respondent James W. Childers, Sheriff of Greenbrier County ("Sheriff"), the trial court directed the Commission to: 1) allocate sufficient funds in the fiscal year 2011–12 budget for the Sheriff to fill any necessary vacant positions;[1] 2) meet and confer with the Sheriff to determine an amount that is fair and reasonable to uniform and train personnel and to discuss and resolve any other remaining budget items for fiscal year 2011–12; and 3) present a revised budget not later than June 7, 2011. Arguing that its actions in setting the Sheriff's budget were not arbitrary and capricious and that mandamus was improperly used to direct it

---

1. This directive included the proviso that such allocations were only to be made as long as other constitutional or statutory duties would not be adversely affected.

to perform a discretionary act, the Commission seeks a writ of prohibition to prevent the enforcement of the trial court's directives. Upon our careful review of the issues presented against the record submitted in this case, we conclude that the trial court improperly issued a writ of mandamus against the Commission. Accordingly, we grant the writ of prohibition sought by the Commission to prevent the enforcement of the lower court's mandamus ruling.

## I. Factual and Procedural Background

As part of its annual budget setting process, the Commission met with various public officials, including the Sheriff,[2] on March 8, 2011. The purpose of this meeting was to confer with the county officials regarding their budgetary requests and needs. During the meeting, the Commission advised the Sheriff that he should review his budget requests in light of the funds available to fill those requests. While the Commission had budgeted extra funds for the Sheriff to enable him to bring his office "up to speed" for the past two budget years, the county was currently faced with a tighter financial situation.

In setting the Sheriff's budget for fiscal year 2011–12, the Commission compared the Sheriff's budget with past budgets of the Greenbrier County Sheriff's office,[3] as well as the law enforcement budgets in other counties. Noting that Sheriff Childers' budget had increased over $940,000. in the two years he had been in office, the Commission discovered that only one of the seven counties examined [4] spent more money per person than Greenbrier County.[5] Looking at the figures for 2010–11, the Commission observed that the Mercer County Sheriff's Office employed 25 deputies, compared to 27 in Greenbrier County; Mercer County had a population of 61,921 compared to 34,527 in Greenbrier County; and Mercer County had a sheriff's budget of $1,926,615 while Greenbrier County's budget was $2,171,175. In the same vein, Fayette County employed 30 deputies; had a population of 46,123; and a law enforcement budget of only $1,016,645.

With regard to the line item of "Travel and Training," the Commission noticed that the 2010–11 Greenbrier County Sheriff's budget had been allotted $102,000 for these purposes whereas Kanawha County, a county with four times the Greenbrier County Sheriff's budget,[6] had a $50,000 travel and training budget.[7] With regard to uniform expenses, the Sheriff had been budgeted $99,000 in 2010–11 and he sought an additional $80,000 for uniforms in 2011–12.[8] Other counties, as the Commission observed, spent far less on uniforms: Fayette County—$18,000; Mercer County—$11,000; and Nicholas County—$15,000.

Due to the Sheriff's decision to stop participating in the cooperative drug task force with the State Police, the Commission recognized that there was no need to allot $20,000 for overtime pay for two sheriff's deputies as had previously been the case. Another factor that the Commission considered in setting the Sheriff's budget for 2011–12 was the Sheriff's failure to spend money that had been previously appropriated in the 2010–11 budget for the hiring of two additional deputies.[9]

---

2. Also in attendance with the Sheriff were his chief deputy; his clerk from law enforcement; and his assistant from the tax office.

3. Sheriff Childers took office in 2009.

4. Those counties were: Fayette, Greenbrier, Kanawha, Mercer, Nicholas, Pocahontas, and Raleigh.

5. That county was Pocahontas, a large county in area with a small population.

6. The Kanawha County Sheriff's budget for 2010–11 was $8,835,175.

7. The Greenbrier County Sheriff who was in office before Sheriff Childers only had $25,000 allotted for travel and training.

8. According to the Sheriff, the budget line item of "uniforms" may also include items such as duty gear, weapons, vests, radar, laptop computers, training and qualification ammunition. He represents that this category of budget expenses "is generally a catch-all for a whole host of items used by law enforcement that do not fit into any other line item."

9. Due to the fact that the Sheriff had applied for and obtained grant money for the hiring of a deputy in September 2010, his failure to actually hire an additional deputy resulted in the Com-

After factoring in all of the above considerations plus several more,[10] the Commission made the decision to reduce several line items in the Sheriff's budget.[11] In response to the Sheriff's budget request of $1,338,965 for salaries and wages, the Commission approved the amount of $1,131,090. The reduction amounted to $144,814 less than what was provided for salaries and wages in the 2010–11 fiscal year. According to the Commission, this reduction is partly attributable to the Sheriff's failure to hire the additional deputies he had received funding for in the prior budget year. All of the Sheriff's current employees were fully funded and each received a $100 raise.[12] In the event the Sheriff hired additional deputies, the Commission let it be known that funds would be made available for their salaries. With regard to uniforms, the Commission approved $45,000 for this line item rather than the $80,000 the Sheriff had requested. The Commission approved the amount of $25,000 for training and education instead of the $75,000 requested by the Sheriff. The Commission approved $4,000 of the $12,000 the Sheriff had requested for travel expenses.

The Sheriff responded to the reductions to his 2011–12 budget by filing a petition for a writ of mandamus.[13] Challenging the reductions as arbitrary and capricious, the Sheriff suggested the Commission had an improper motive for the budget cuts.[14] The specific cuts he challenged before the trial court included a purported $202,318 reduction in his budgeted amount for salaries and wages as contrasted to fiscal year 2010–11. That figure was reduced to $185,408 when the matter reached this Court.[15] Other cuts that he relied upon to support his position that his budget had been improperly reduced were $65,000 for training and education; $54,000 for uniforms; and $8,000 for travel.

In granting the writ of mandamus, the trial court wholly discarded the evidence introduced by the Commission regarding law enforcement costs in other counties, stating that it did "not consider such testimony to be relevant to the decision to be reached." According to the lower court, such evidence, "while interesting, is not of much help."[16] Addressing the requirement imposed by law that a county commission meet with the county sheriff to discuss budgetary matters,[17] the trial court imposed an obligation, apparently on the Commission, to demonstrate that the meeting was "meaningful."[18] In reference to the Commission's representation that it would provide the necessary funds for the salaries of deputies if the Sheriff were to actually hire such individuals, the trial court opined that this representation "demon-

mission having to repay the $19,133.75 in grant money to the Division of Criminal Justice Services.

10. The Commission considered the fact that the Sheriff had been budgeted $85,000 for new cars in the prior year due to a carryover of funds from the previous budget year, and it also honored the Sheriff's request that no monies expected to be received from grants be reflected in his current budget.

11. While the Commission specifically requested that the Sheriff meet with them to discuss the reductions in his budget request prior to the budget's approval, he declined to do so.

12. This was a raise given to all county employees.

13. The petition was filed with the lower court on April 15, 2011, shortly after the budget was approved by the Commission on March 25, 2011.

14. As support for this theory, he cites the fact that his office was the only county office to have a reduction in salary and wages for the 2011–12 fiscal year.

15. To reach the cumulative figure of $185,408 of reductions in salaries and wages from the 2010–11 budget year, the Sheriff was including three additional budgets other than his law enforcement budget, which the parties concur had a $144,814 reduction. Those budgets were (1) Sheriff—Treasurer ($17,415 less); (2) Sheriff—Service of Process ($3,219 less); and (3) Jail—Non-reimbursable Costs ($19,960).

16. The trial court commented that such evidence would only be useful if the "[c]omparisons between budgets of the various counties and sheriffs, . . . show[ed] similar populations, urban centers, rural areas, and geographic size, as well as similar revenue. . . ."

17. See W.Va.Code § 7-7-7 (2010).

18. Without identifying any underpinnings for this conclusion, the trial court summarily concluded that the necessary meaningfulness was missing in this case.

strates an incorrect misunderstanding of the law."[19] The trial court concluded that the Commission had acted arbitrarily and capriciously "by reducing the Sheriff's budget while increasing funding for other County Officers and projects." According to the trial court, "[s]uch cuts interfere with the Sheriff's ability to fulfill his constitutional and statutory duties." As part of the relief granted, the trial court directed the Commission to allocate sufficient funds for fiscal year 2011–12 "for the Sheriff to fill any necessary vacant positions; to meet and confer with the Sheriff to determine an amount that is fair and reasonable to uniform and train personnel;[20] and to present a revised budget not later than June 7, 2011." Under authority of *State ex rel. Lambert v. Cortellessi*, 182 W.Va. 142, 386 S.E.2d 640 (1989), the Sheriff was awarded his attorney's fees and expenses.

In an effort to comply with the trial court's ruling, the Commission made multiple attempts to meet with the Sheriff. When those efforts proved unsuccessful,[21] the Commission filed a petition for a writ of prohibition with this Court seeking to prevent the enforcement of the writ of mandamus.

## II. Standard of Review

The five-factor test we apply for examining whether a writ of prohibition should be granted because a trial court exceeded its legitimate powers is well-ensconced in our jurisprudence. *See* Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d

12 (1996). Accordingly, we proceed to determine whether the trial court's issuance of a writ of mandamus was in excess of its authority.

## III. Discussion

■ That "the county courts [now county commissions] of this State are vested with a wide discretion in the superintendence and administration of the internal police and fiscal affairs of their counties" is well established. Syl. Pt. 1, in part, *Meador v. County Court*, 141 W.Va. 96, 87 S.E.2d 725 (1955). The founders of this State, as we related in *Meador*, "were concerned with an assurance of local self-government."[22] *Id.* at 109, 87 S.E.2d at 734. To preserve that selected form of governance,[23] the state constitution provides: "The county commissions[24] ... shall ... under such regulations as may be prescribed by law, have the superintendence and administration of the internal police and fiscal affairs of their counties...." W.Va. Const. art. IX, sec. 11 (footnote added).

■ The mechanism by which county commissions receive and consider the proposed budgets prepared by county officials is set forth in West Virginia Code § 7–7–7 (2010). Through an annual process that involves a review of the needs and requests of county officials, each county commission identifies an aggregate sum for the respective budgets of its various county officials. In reaching the respective aggregate sums, a county commission is required to "give due consideration to the duties, responsibilities and work re-

19. The trial court took the position that the Commission could not "hold money aside in the budget and unofficially authorize the Sheriff to hire upon the promise that the funding will be made available in the future."

20. At this meeting, the Commission was also directed to discuss "any other unresolved issues in the budget for fiscal year 2011–12."

21. The mandamus ruling was issued on May 20, 2011. The first meeting scheduled by the Commission was set for Friday, May 27, 2011, at 4 p.m. This time of day was chosen due to the Sheriff's duties as a bailiff. After the trial court extended the applicable deadline to July 1, 2011, the Commission scheduled another meeting for June 21, 2011. The Sheriff advised the Commission that he would not be attending the meeting. The Commission then requested that the Sheriff

provide it with additional dates and times to meet, but the Sheriff never responded to the Commission's request.

22. As we posited in *Meador*, the framers of our constitution, in creating the county courts, now the county commission, "must have seen a tribunal which embodied the means by which democratic processes, through representative government, could be accomplished." 141 W.Va. at 109, 87 S.E.2d at 734.

23. The language at issue was originally set forth in article VIII, section 24 of the state constitution.

24. As a result of the Judicial Reorganization Amendment enacted in 1974, the county courts were designated as county commissions. *See* W.Va. Const. art. IX, § 11.

quired of the assistants, deputies and employees" and to see that "their compensation shall be reasonable and proper." W.V.Code § 7–7–7. Subject only to the requirement that they not exceed the aggregate amount of their respective budget, county officials are given the responsibility of "fixing the individual compensation of their assistants, deputies and employees." *Id., see State ex rel. Cooke v. Jarrell,* 154 W.Va. 542, 545–46, 177 S.E.2d 214, 216 (1970).

■ The constraints on using a writ of mandamus for purposes of directing the budgetary actions of a county commission are well settled. As we iterated in *State ex rel. Canterbury v. County Court,* 151 W.Va. 1013, 158 S.E.2d 151 (1967), the separation of powers doctrine [25] prevents courts from passing judgment on administrative [26] fiscal matters barring a specific challenge that is rooted in grounds of arbitrariness or capriciousness. *Id.* at 1018–19, 158 S.E.2d at 155–56. In *Canterbury,* the county clerk sought a writ of mandamus following an aggregate wage reduction of $17,400 for ten employees of the county clerk's office. After determining that the budgetary reduction at issue was not made in a wilful or arbitrary manner, the trial judge issued a writ of mandamus based on its finding that the county clerk lacked sufficient money to operate his office in an efficient manner. *Id.* at 1014, 158 S.E.2d at 153.

■ In considering whether the trial court improperly issued the writ of mandamus in *Canterbury,* we revisited this Court's decision in *State ex rel. Buxton v. O'Brien,* 97 W.Va. 343, 125 S.E. 154 (1924), a case which addressed the limits of using mandamus as a form of relief in matters of budget setting. When the county court [27] and the circuit court clerk could not agree on the compensation total for the clerk's deputies and assistants in *O'Brien,* this Court was asked to consider whether the parties could be compelled to reach an agreement:

> [W]hile mandamus will lie to compel them to so meet, yet it will not lie to compel them to act in any particular manner or fix any particular sum. The duty to fix this amount is imposed by statute, but what that amount shall be seems to be entirely discretionary with them under the requirements of the law.

*Id.* at 349, 125 S.E. at 157. As a result, we held in syllabus point one of *O'Brien:* "Mandamus is a proper remedy to compel tribunals and officers exercising discretionary and judicial powers to act, when they refuse so to do, in violation of their duty, *but it is never employed to prescribe in what manner they shall act, or to correct errors they have made.*" *Id.* at 343, 125 S.E. at 154 (emphasis supplied).

■ Without finding arbitrariness or willfulness with regard to the county clerk's budget reduction, the trial court in *Canterbury* had directed the county court to " 'reconvene and reconsider the estimate and levy for the fiscal year 1967–68 and to redetermine and reallot a sufficient sum of money for the continued operation of the county clerk's office.' " *Id.* at 1025, 158 S.E.2d at 159. Recognizing a need to clarify the law in this area, we held in syllabus point two of *Canterbury:* "In the absence of arbitrary action on the part of a county court in the exercise of its discretion as to the sum to be allotted to the office of the county clerk for the compensation of deputies and assistants for the ensuing fiscal year, in accordance with the provisions of Code, 7–7–7, as amended, mandamus will not lie." 151 W.Va. at 1013, 158 S.E.2d at 153. Because the trial court had not found the county court to have acted arbitrarily in reducing the budget at issue, this Court concluded that the trial court lacked the proper legal basis for issuing a writ of mandamus. 151 W.Va. at 1025, 158 S.E.2d at 159.

**25.** W.Va. Const. art. V, § 1.

**26.** *See* Syl. Pt. 1, *Canterbury,* 151 W.Va. at 1013, 158 S.E.2d at 153 (holding that duty of county court [county commission] to fix aggregate sum for compensation of county officials "is of an administrative, not a judicial, nature"); *see also State ex rel. County Court v. Demus,* 148 W.Va.

398, 401, 135 S.E.2d 352, 355 (1964) (recognizing that courts are "forbidden to perform administrative duties" by separations of powers provision of state constitution).

**27.** *See supra* note 24.

More recently, we examined the issue of when mandamus lies to control a county commission's exercise of its discretion in setting the amount of money to be expended by county officers for staff compensation. In *Lambert v. Cortellessi*, 182 W.Va. 142, 386 S.E.2d 640 (1989), county officers were successful in obtaining mandamus relief from their respective circuit courts when the county commissions reduced the amount available for salaries and wages for the McDowell County Circuit Court Clerks office, the McDowell County Prosecuting Attorney, and the Wayne County Clerk of the County Commission. In each of those instances, the respective county commission had implemented the budget reduction without consulting with the county officer whose budget was at issue to ascertain the workload and operating needs of the office. *Id.* at 149, 386 S.E.2d at 647.

In considering whether the judiciary had the right to interfere with the county commissions' actions, we recognized that courts, as a general rule, do not interfere with the administrative duties of the executive department. The budget setting power of a county commission is not without limitation, however, as we explained in *Lambert*.

Arbitrary or capricious conduct by a county commission in fixing a county officer's budget would not be condoned. By requiring the county officer's staff compensation to be "reasonable and proper" in consideration of "the duties, responsibilities and work required of the assistants, deputies and employees," *W.Va.Code*, 7–7–7 [1982] ... sets a minimum standard, the clearly proved violation of which would constitute arbitrary or capricious conduct: "[S]uch [statutory] language requires the county [commission] to provide such funds as will permit the [county] official to properly carry out the statutory duties of his [or her] office."

*Lambert*, 182 W.Va. at 147–48, 386 S.E.2d at 645–46 (quoting *Canterbury*, 151 W.Va. at 1020, 158 S.E.2d at 156–57) (additional citation omitted).

 Given the requirements imposed on the county commission by West Virginia Code § 7–7–7 to provide "reasonable and proper" compensation to the staff of county officers and to "give due consideration" to the "duties, responsibilities and work required" of those individuals, we determined that the county commission was required to consult with each county officer as part of the budget setting process. Because the respective budgets were prepared in *Lambert* without this required consultation, the county commissions' actions in setting the budgets at issue qualified as arbitrary. 182 W.Va. at 148, 386 S.E.2d at 646. Accordingly, we held in syllabus point one of *Lambert* that

Mandamus lies to compel county commission to "give due consideration to the duties, responsibilities and work required of the assistants, deputies and employees" of a county officer, as required by *W.Va. Code*, 7–7–7, as amended, where the county commission has arbitrarily fixed the overall budget of a county officer without having consulted with the county officer as to the amount of funds which is "reasonable and proper" for the performance of the statutory duties of his or her office.

182 W.Va. at 143, 386 S.E.2d at 641.

 Despite the fact that the county commissions had acted arbitrarily in setting the budgets at issue in *Lambert*, this Court was clear that the Circuit Court of McDowell County had exceeded its authority in directing the McDowell County Commission to restore the two budgets at issue to the level of the preceding fiscal year. In contrast, the Wayne County Circuit Court had correctly recognized the limits on the relief it could grant by ordering the parties to reconvene for the purpose of considering whether to revise the county officer's budget in light of the county officer's demonstrated monetary need. As we explained,

The county commission, not a court, has the authority to fix the amount of the revised budget for a county officer, for that is an administrative function *relating to a county office*, and *W.Va. Const.* art. IX, § 11 confers upon the county commission the power to administer the fiscal affairs of the county. "[T]o substitute the judgment of the circuit court for that of the county court [now, county commission] in its administration of the fiscal affairs of the

county accorded by Article VIII, Section 24," now, *W.Va. Const.* art. IX, § 11, would be unconstitutional.

*Lambert,* 182 W.Va. at 149, 386 S.E.2d at 647 (citation omitted). As initially articulated in *Buxton,* mandamus may be used to order parties to act but it cannot be used to direct the specific actions of those entities. *See* 97 W.Va. at 343, 125 S.E. at 154, syl. pt. 1.

In this case, the trial court sought to avoid the impediment that prevented mandamus from being proper in *Canterbury*—the lack of a finding of arbitrariness or capriciousness. *See* Syl. Pt. 2, *Canterbury,* 151 W.Va. at 1013, 158 S.E.2d at 153. In the ruling at issue in the case before us, the trial court found two grounds for the issuance of the writ of mandamus: arbitrary and capricious action and misapprehension of the law.[28] While the trial court stated appropriate grounds for issuing the writ, neither of those grounds withstands scrutiny upon examination.

■ To support its finding of arbitrary and capricious action, the trial court cited the reduction in the Sheriff's budget as contrasted to an unspecified increase in funding for other county officers and projects. And, in conclusory fashion, the trial court stated that these "cuts interfere with the Sheriff's ability to fulfill his constitutional and statutory duties." Our review of the record in this case reveals that the budget cuts at issue were not random and without basis, as claimed by the Sheriff. Quite the opposite is true. Of the $144,814 reduction in the law enforcement salary and wages line item it appears that either $105,000 or $107,000 of that amount was due to the Sheriff's failure to hire three additional deputies for whom the Commission had included funds to cover their salaries in the preceding budget year. And, the record is clear, that in the event the Sheriff were to hire these additional employees, the Commission had indicated its willingness to provide the additional funds for their wages. To look at the budget reduction

without factoring in the substantial increase in funding that the Sheriff had been provided the previous two budget years is misleading. Of further import to this case is the fact that the Sheriff was fully funded for all of his current employees and those employees, like all other county employees, had received a $100 increase in salary. Upon our careful review of the record of this case, we do not find that the Commission acted arbitrarily or capriciously in making reductions to the Sheriff's budget for fiscal year 2011–12.

■ While the trial court makes the assumption that the budget cuts at issue necessarily will "interfere with the Sheriff's ability to fulfill his constitutional and statutory duties," we made it clear in *Lambert* that a claim of improper funding under West Virginia Code § 7–7–7 must be "clearly proved." 182 W.Va. at 148, 386 S.E.2d at 646. Before any action would be warranted in connection with a county officer's claim that he or she is prevented from fulfilling his or her statutory duties based on budgetary concerns, there must first be an evidentiary proceeding through which the issue of inadequate funding within the meaning of West Virginia Code § 7–7–7 is established. In this case, the record is devoid of any evidentiary basis for the trial court's conclusion that the Sheriff's statutory duties will be affected by the reduction. Moreover, absent evidence that a county commission has budgeted a clearly inadequate sum for the performance of the statutory duties of a county officer, a trial court lacks the authority to direct a county commission to meet for the purpose of preparing a revised budget. Given the lack of any such evidence in this case, the trial court clearly exceeded its authority in directing the Commission to prepare a revised budget for fiscal year 2011–12.

■ In ruling that the Commission misapprehended the law, the trial court wrongly injected itself into fiscal matters clearly re-

---

**28.** In citing misapprehension of law as a ground, the trial court looked to our discussion in *Lambert* of the exception to the rule that courts typically will not interfere with the discretionary acts of state officers or boards barring such grounds

as "caprice, passion, partiality, fraud, arbitrary conduct, some ulterior motive, or misapprehension of law." 182 W.Va. at 148, 386 S.E.2d at 646 (emphasis and internal quotations omitted).

served to the Commission.[29] Without identifying the specific law that the Commission acted in violation of or misapprehended, the trial court found that the Commission could not, as it had promised, set aside funds for the purpose of supplementing the Sheriff's law enforcement budget when and if the Sheriff were to hire additional deputies.[30] Counsel has not directed us to, and neither are we aware of, any law that would prevent the Commission from amending the budget mid-fiscal year to provide the necessary additional funds. Moreover, the Commission states that it routinely adds items to its budget during the course of a particular budget year.

 In syllabus point five of *Lambert*, this Court held that "[w]here a county commission arbitrarily fixes a county officer's budget without complying with the provisions of *W. Va. Code*, 7–7–7, as amended, the county commission is responsible for the county officer's reasonable attorney's fees incurred in a mandamus proceeding to compel compliance with that statute." 182 W.Va. at 143, 386 S.E.2d at 641. Citing that authority, the trial court awarded attorney's fees to the Sheriff as part of its mandamus relief.

Based on our determination that the record does not support the trial court's conclusion that the Commission acted arbitrarily and capriciously in reducing the Sheriff's budget and because the record also does not support a finding that the Commission failed to comply with the requirements of West Virginia Code § 7–7–7, we find that the trial court's award of attorney's fees was improper.

Based on the foregoing, we find that the trial court exceeded its jurisdiction in awarding a writ of mandamus to the Sheriff and, accordingly, we issue a writ of prohibition to prevent the enforcement of the May 20, 2011, ruling of the Circuit Court of Greenbrier County including the award of attorney's fees granted to the Sheriff. *See* Syl. Pt. 4, *Hoover*, 199 W.Va. at 14–15, 483 S.E.2d at 14–15.

Writ granted.

---

**29.** Similarly, the trial court had no basis for its ruling that the "meeting" requirement this Court has found necessary to comply with the mandates of W.Va.Code § 7–7–7 must be "meaningful." The trial court appears to suggest that county officers who do not receive all the funding they request should argue that the Commission did not provide them with a sufficiently "meaningful" meeting. We reject the trial court's attempt to define what is required for purposes of the meeting that the Commission holds with its county officers to discuss budget proposals.

**30.** In his brief, the Sheriff suggests that the illegal act at issue was the promise of one commissioner to extend those funds without a formal vote having been made to amend the Sheriff's budget. To assume that the Commission would attempt to transfer the necessary funding for such new employees without having a meeting and formally voting to amend the Sheriff's budget is clearly outside the scope of the record before us.